Terry D. BARBER, Appellant,

v.

STATE of Tennessee, Appellee.

Supreme Court of Tennessee,
at Jackson.

Oct. 3, 1994.

Rehearing Denied Nov. 28, 1994.

Certiorari Denied Feb. 21, 1995.

See 115 S.Ct. 1177.

Christopher M. Minton, Passino & Minton,
Counsel in Supreme Court, Nashville, Wil-

liam K. Randolph, Public Defender, Dyersburg, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Amy L. Tarkington, Asst. Atty. Gen., Nashville, James O. Lanier, Dist. Atty. Gen., Lyman Ingram, Asst. Dist. Atty. Gen., Dyersburg, for appellee.

## OPINION

DROWOTA, Justice.

■ In 1986, the Lake County Criminal Court convicted Terry Barber of first degree burglary, robbery by use of a deadly weapon, and first degree murder in perpetration of larceny. He was sentenced to fifteen years on the burglary, to life on the robbery by use of a deadly weapon, and to death on the murder in perpetration of larceny. The death penalty was predicated on the jury's finding of two aggravating circumstances: (1) the murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind, and (2) the murder was committed while the defendant was engaged in committing larceny. T.C.A. § 39-2-203(i)(5) and (7)(1982). This Court affirmed the conviction and sentence on direct appeal in *State v. Barber,* 753 S.W.2d 659 (Tenn.1988), *cert. denied,* 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 236 (1988).

Barber then filed a pro se post-conviction petition. He was subsequently appointed counsel, and his amended post-conviction petition raised fifteen issues. The trial court denied relief and the Court of Criminal Appeals affirmed. An application for permission to appeal pursuant to Rule 11, T.R.A.P., was filed in this Court.

■ While the application was pending, *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn. 1992) (Justices Drowota and O'Brien dissenting), was released. In that case a majority of this Court held that "when the defendant is convicted of first-degree murder solely on the basis of felony murder the aggravating circumstance set out in Tenn. Code Ann. §§ 39-2-203(i)(7)(1982) and · 39-13-

204(i)(7)(1991) [the so-called felony murder circumstance], does not narrow the class of death-eligible murderers sufficiently under the Eighth Amendment to the U.S. Constitution, and Article I, § 16 of the Tennessee Constitution because it duplicates the elements of the offense." *Id.* at 346. As a result, the majority concluded "that Tenn. Code Ann. § 39-2-203(i)(7) is unconstitutionally applied under the Eighth Amendment to the U.S. Constitution and Article I, § 16 of the Tennessee Constitution where the death penalty is imposed for felony murder." *Id.* See also *State v. Bigbee,* 885 S.W.2d 797 (Tenn.1994) (Justices Drowota and O'Brien dissenting), which reaffirms *Middlebrooks.*

Because the decision in *Middlebrooks* called into question the constitutional validity of the sentence in this cause, we filed an order granting review for the limited purpose of considering two issues left open in *Middlebrooks:* (I) whether this Court's holding in that case should be retroactively applied; and (II), if so, whether application of the felony murder aggravating circumstance in this case constitutes harmless error.[1]

### I.

The State first argues that this Court's decision in *Middlebrooks* should not be retroactively applied to a case where the conviction became final long before the rule in *Middlebrooks* was announced. In *Meadows v. State,* 849 S.W.2d 748 (Tenn.1993), authored by Justice Anderson, we departed from federal law on retroactivity and held that "a new state constitutional rule is to be retroactively applied to a claim for post-conviction relief if the new rule materially enhances the integrity and reliability of the fact finding process of the trial." *Id.* at 755. We now hold that the rule in *Middlebrooks* materially enhances both the integrity and the reliability of the fact finding process in the sentencing phase of a capital trial and should therefore be applied retroactively.

1. The release of this opinion was delayed pending the disposition of two other capital cases, *State v. Howell,* 868 S.W.2d 238 (Tenn.1993), and *State v. Bigbee,* 885 S.W.2d 797 (Tenn.1994) (Justices Drowota and O'Brien dissenting). In *Big-* *bee,* filed contemporaneously with this opinion, the Court, as presently constituted, reconsidered and reaffirmed *Middlebrooks.* These cases provide guidance for the determination of the issues before us today.

■ The constitutional concern in *Middlebrooks* was that the class of death-eligible murderers be narrowed so that only the worst offenders receive the death penalty. *See Middlebrooks,* 840 S.W.2d at 341–347. The Court observed that the felony murder aggravating circumstance duplicates the crime of felony murder and thereby makes all felony murderers susceptible to the death penalty. This Court found that such a result violates the Eighth Amendment to the United States Constitution, as well as Article I, Section 16 of the Tennessee Constitution. *Id.* at 346. When an aggravating circumstance is improperly injected into the process by which the jurors must weigh aggravating and mitigating circumstances to determine a sentence, the integrity and reliability of the sentencing process is jeopardized because the death penalty may not be reserved for only the most culpable defendants. For this reason, we apply *Middlebrooks* retroactively under the *Meadows* rule.

## II.

■ The State next argues that the application of the felony murder aggravating circumstance in T.C.A. § 39–2–203(i)(7) constituted harmless error. The State correctly points out that this Court has previously conducted a harmless error analysis and upheld the imposition of the death penalty where an aggravating circumstance was invalidated. *See State v. Bobo,* 727 S.W.2d 945, 956 (Tenn.1987), *cert. denied,* 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987); *State v. Workman,* 667 S.W.2d 44, 49 (Tenn.1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984); *State v. Cone,* 665 S.W.2d 87, 94 (Tenn.1984), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2400, 81 L.Ed.2d 357 (1984); and *State v. Campbell,* 664 S.W.2d 281, 284 (Tenn.1984), *cert. denied,* 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984). *But see State v. Van Tran,* 864 S.W.2d 465, 480 (Tenn.1993); *State v. Terry,* 813 S.W.2d 420, 425 (Tenn.1991); and *Teague v. State,* 772 S.W.2d 915, 931 (Tenn.Cr.App.1988). *See also State v. Williams,* 690 S.W.2d 517 (Tenn.1985); *State v. Pritchett,* 621 S.W.2d 127 (Tenn.1981); and *State v. Moore,* 614 S.W.2d 348 (Tenn.1981).

At the time that we granted the application for permission to appeal in this case, it was unclear whether the use of an invalid aggravating circumstance under *State v. Middlebrooks* could likewise be harmless error. In *Middlebrooks* itself, the majority held only that, despite the ample evidence to support the one remaining aggravating circumstance, it was "unable to conclude that the elimination of the aggravating circumstance (i)(7) is harmless error beyond a reasonable doubt." 840 S.W.2d at 347. The case was therefore remanded for re-sentencing. Several subsequent cases were equally ambiguous on this issue. *See State v. Leonard Smith,* 857 S.W.2d 1, 25 (Tenn.1993); *Sparks v. State,* No. 03S01–9212—CR–00105, 1993 WL 151324 (Tenn. May 10, 1993) (not for publication); *State v. Bane,* 853 S.W.2d 483, 489–490 (Tenn.1993); *State v. Evans,* 838 S.W.2d 185 (Tenn.1992).

The question of whether error under *State v. Middlebrooks* could be harmless was answered in *State v. Howell,* 868 S.W.2d 238 (Tenn.1993), a recent opinion authored by Justice Anderson and released six months after the briefing and oral arguments in this cause. In *Howell,* this Court not only found that the use of an invalid aggravating circumstance in violation of *Middlebrooks* could be harmless error but also, for the first time, gave a detailed analysis for harmless error review when the sentencing jury has relied in part on a constitutionally invalid aggravating circumstance. The Court followed the harmless error standard set out by the United States Supreme Court in *Stringer v. Black,* 503 U.S. 222, ——, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992). Under this rule, before a capital sentencing jury's consideration of an invalid aggravating factor may be declared harmless error, an appellate court must conclude, beyond a reasonable doubt, that the sentence would have been the same had the sentencing authority given no weight to the aggravating factor. *Howell,* 868 S.W.2d at 260.

This Court then proceeded to formulate and apply the harmless error analysis it had adopted.

In order to guarantee the precision that individualized sentencing considerations demand and provide a principled explanation for our conclusion in each case, it is important, when conducting harmless error review, to completely examine the record for the presence of factors which potentially influence the sentence ultimately imposed. These include, but are not limited to, the number and strength of remaining valid aggravating circumstances, the prosecutor's argument at sentencing, the evidence admitted to establish the invalid aggravator, and the nature, quality and strength of mitigating evidence.

868 S.W.2d at 260–261.

In *Howell*, the sole remaining aggravating circumstance consisted of previous convictions of felonies involving the use of violence to the person. The evidence supporting this remaining aggravating factor was undisputed and overwhelming. The prosecutor's argument strongly emphasized the defendant's violent felony convictions, with little emphasis on the armed robbery. No additional evidence, nor any evidence that was not already properly before the jury, was introduced in support of the invalid aggravating circumstance. After a review of that record, we concluded beyond a reasonable doubt that the sentence would have been the same had the jury given no weight to the invalid felony murder aggravating factor, and we affirmed the sentence of death. 868 S.W.2d at 262.

This Court has since used the *Howell* harmless error analysis in *State v. Sylvester Smith*, 1994 WL 761902 (Tenn.1994) (released contemporaneously with this opinion); *State v. Nichols*, 877 S.W.2d 722 (1994); *State v. Cazes*, 875 S.W.2d 253, 269–70 (Tenn. 1994) and *State v. Oscar Smith*, 868 S.W.2d 561, 584 (Tenn.1993) (*Howell* harmless error treated in concurring opinion by Reid, C.J.). We must now apply the *Howell* analysis to the facts in this record in order to determine whether the capital sentencing jury's consideration of an invalid aggravating circumstance in the present case is harmless error beyond a reasonable doubt.

■ At Barber's trial, the jury found one remaining aggravating circumstance, that the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind, T.C.A. § 39–2–203(i)(5) (1982). In *State v. Williams*, 690 S.W.2d 517 (Tenn. 1985), we said,

[T]o show that the murder was especially heinous, atrocious or cruel the State must prove that it involved torture of the victim or depravity of mind of the killer.

\* \* \* \* \* \*

"Torture" means the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious. In proving that such torture occurred, the State, necessarily, also proves that the murder involved depravity of mind of the murderer, because the state of mind of one who willfully inflicts such severe physical or mental pain on the victim is depraved.

*Id.* at 529. We conclude that the evidence overwhelmingly supports the jury's finding that the murder in this case involved torture and depravity of mind as defined in *Williams*.

The record shows that the victim, age seventy-five, lived alone in her home in Ridgely, Lake County, Tennessee. The victim's son testified that his mother had been in bad health for four or five years and that she had used a walker. The cause of death was multiple blows to the head and ensuing brain damage. There were at least five blows to the head, possibly more. The wounds were consistent with injuries inflicted with a crescent wrench. Those to the back and left side of the head were associated with extensive skull fractures. In fact, the back of the victim's skull was virtually crushed. An inflammatory reaction present in all of the wounds indicated that they had been inflicted while the victim was alive. "Fresh" bruises on the back of both of the victim's hands were the result of "blunt trauma" and could also have been produced by a blow with a wrench.

Barber lived with his parents close to where the victim lived. Barber's brother-in-

law testified that the Defendant had asked him to participate in a burglary involving "an old woman and that he'd have to kill her because she'd recognize him." The Defendant's sister heard the Defendant tell their mother that "he had to do it because she recognized him." The Defendant told an inmate in the Lake County jail that he "had to hit the old bitch four or five times to even get her down."

In this case the jury could permissibly infer that the victim was alive and conscious when she was repeatedly and brutally beaten based on Barber's statement that "I had to hit the old bitch four or five times to even get her down." Other evidence of the victim's consciousness would be the fact that fresh bruises to the back part of both hands were found. These defensive wounds more than likely were caused when the victim attempted to ward off the blows to her head. As in *State v. Melson*, 638 S.W.2d 342, 367 (Tenn. 1982), the proof shows that the victim had defensive injuries proving that there was time for her to realize what was happening, to feel fear, and to try to protect herself.

The proof also firmly establishes that Barber willfully inflicted severe mental and physical pain on the victim. There was a great disparity in physical strength between Barber and the victim. Barber showed a total disregard for human life in the fierceness and atrocity of the attack, the number of blows inflicted, and the absence of any provocation by a helpless and defenseless victim. The willfulness of Barber's actions and the depravity of his mind at the time of the offense may be further inferred from the comments he made to others regarding the killing. The evidence clearly and overwhelmingly supports the remaining valid aggravating circumstance that the murder involved torture or depravity of mind. *See, e.g., State v. Van Tran*, 864 S.W.2d at 480; *State v. McNish*, 727 S.W.2d 490, 494 (Tenn. 1987).

We next look in our analysis to the extent to which the prosecutor emphasized the felony murder aggravating factor during closing argument. The felony murder aggravator was mentioned only one time during closing arguments.[2] The Assistant District Attorney's argument at sentencing focused on the heinous, atrocious, or cruel aggravator; and he cited the medical testimony of the pathologist describing the victim's wounds to support his argument. Defense counsel's closing argument dealt with the philosophy of the death penalty. In an emotional and compassionate plea for the Defendant's life, counsel walked the jury through the death row process and the final hours before electrocution. Attempting to respond to defense counsel's passionate argument, the District Attorney related his philosophy in support of the death penalty but made no reference to the invalid circumstance.

Another factor *Howell* teaches us to consider is "the evidence admitted to establish the invalid aggravator." As stated in *Howell*, "an aggravating factor which duplicates the elements of the underlying crime has less relative tendency to prejudicially affect the sentence imposed than invalid aggravating factors which interject inadmissible evidence into the sentencing calculus, or which require the sentencing jury to draw additional conclusions from the guilt phase evidence." 868 S.W.2d at 261. In this case, no additional evidence, nor any evidence that was not already properly before the jury to support the felony murder, was introduced in support of the invalid felony murder aggravator.

We next look to the nature, quality and strength of the mitigating evidence. The jury was charged to consider "the youth of the Defendant at the time of the crime," T.C.A. § 39–2–203(j)(7), and that "the Defendant is a person capable of being rehabilitated." There was evidence in the record dealing with both mitigating circumstances, but it was insubstantial. Barber was 29 years old at the time of the offense. It was shown that

---

2. The only reference to the felony murder circumstance was the Assistant District Attorney's comment: "And that aggravating circumstance is that the murder was committed while the defendant was engaged in committing or was attempting to commit a larceny. If he was committing a larceny and she died during the commission of that larceny, that is an aggravating circumstance and you can consider it."

he was a welder and had behaved himself in prison in the past.

Based on our thorough review of the record, after careful analysis in conformity with *Howell,* we conclude, beyond a reasonable doubt, that the sentence would have been the same had the jury given no weight to the invalid felony murder aggravating factor. Therefore, since the invalidation of the aggravating circumstance is harmless beyond a reasonable doubt, we affirm the sentence of death.

The stay of execution previously issued is vacated and the sentence will be carried out as provided by law on the 10th day of January, 1995, unless otherwise ordered by this Court or by other proper authority. Costs are adjudged against the Appellant, Terry Barber.

ANDERSON, J., concurs.

REID, J., see separate concurring opinions.

O'BRIEN, C.J., and DAUGHTREY, J., not participating.

REID, Justice, concurring.

This is a post-conviction proceeding, in which the petitioner seeks relief from his sentence of death on the ground that use of an invalid enhancement factor first recognized in *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 651, 126 L.Ed.2d 555 (1993), was a violation of his rights under Article I, Section 16 of the Tennessee Constitution.

I agree with the holding in the main opinion that *Meadows v. State,* 849 S.W.2d 748 (Tenn.1993), makes the principle stated in *Middlebrooks* applicable to the petitioner's sentence. And, even though I do not agree with the analysis in the main opinion of the procedural or substantive law applicable to this case, I concur in the judgment that the sentence be affirmed.

O'BRIEN, Chief Justice, concurring.

I concur with the lead opinion in this case while continuing to adhere to my dissent in the case of *State v. Roosevelt Bigbee,* 885 S.W.2d 797 (Tenn.1994), relative to the con-

stitutionality of T.C.A. § 39–2–203(i)(7) (1982), (T.C.A. § 39–13–204(i)(7) (1991)) under Art. 1, § 16 of the Tennessee Constitution.