FILED

September 30, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT JACKSON

#### NOVEMBER 1995 SESSION

| | | |
|---|---|---|
| MICHAEL EUGENE SAMPLE, | * | No. 02C01-9505-CR-00131 |
| APPELLANT, | * | SHELBY COUNTY |
| VS. | * | Hon. Bernie Weinman |
| STATE OF TENNESSEE, | * | (Post-Conviction-- Death Penalty) |
| APPELLEE. | * | |

| | | |
|---|---|---|
| LARRY McKAY, | * | No. 02C01-9505-CR-00139 |
| APPELLANT, | * | SHELBY COUNTY |
| VS. | * | Hon. Bernie Weinman |
| STATE OF TENNESSEE, | * | (Post-Conviction-- Death Penalty) |
| APPELLEE. | * | |

For Appellant Sample:
David M. Eldridge
606 W. Main Ave.
P.O. Box 1126
Knoxville, TN 37902

Harry R. Reinhart
536 South High Street
Columbus, OH 43215-5605

For Appellant McKay:
Jacob M. Dickinson, IV
648 Poplar Ave.
Memphis, TN 38105-4512

David C. Stebbins
8 East Long Street, Suite 424
Columbus, OH 43215

For the Appellee
Charles W. Burson
Attorney General & Reporter
450 James Robertson Parkway
Nashville, TN 37243-0493

John H. Baker, III
Asst. Attorney General & Reporter
450 James Robertson Parkway
Nashville, TN 37243-0493

John W. Pierotti
District Attorney General

Reginald R. Henderson
Asst. District Attorney General
201 Poplar Ave.
Memphis, TN 38103

OPINION FILED: _____

REVERSED AND REMANDED

William M. Barker, Judge

**OPINION**

The appellants, Michael Eugene Sample and Larry McKay, appeal as of right from the Shelby County Criminal Court's judgments denying their petitions for post-conviction relief.[1] The appellants were each convicted in a joint trial of two counts of felony murder and sentenced to death in November of 1982. Their convictions and sentences were affirmed on direct appeal by the Tennessee Supreme Court, and a petition for writ of certiorari was denied by the United States Supreme Court. State v. McKay & Sample, 680 S.W.2d 447 (Tenn. 1984), cert. denied, 470 U.S. 1034 (1985). Initial suits for post-conviction relief were denied by the trial court and affirmed on appeal. Larry McKay & Michael Eugene Sample v. State, No. 25 (Tenn. Crim. App., Mar. 1, 1989, Jackson), perm. to appeal denied, (Tenn. 1989). Subsequent petititions for post-conviction relief filed by each were also denied by the trial court and affirmed on appeal. Michael E. Sample & Larry McKay v. State, No. 02C01-9104-CR-00062 (Tenn. Crim. App., Feb. 15, 1995, Jackson)(application for permission to appeal pending).[2]

Sample's present post-conviction suit was filed on January 27, 1995, and McKay's suit was filed on February 1, 1995. The grounds for relief in both suits were essentially the same: (a) that the State of Tennessee presented false testimony at trial and suppressed exculpatory evidence; (b) that the death sentences were predicated on an invalid aggravating circumstance under State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992); (c) that the instructions defining reasonable doubt in the guilt and sentencing phases were unconstitutional; and (d) that numerous errors committed by the trial court,

---

[1] The appellants filed separate petitions and separate appeals. We have consolidated the appeals pursuant to Tennessee Rules of Appellate Procedure 16(b).

[2] The opinion filed February 15, 1995, referred to the appellants' "fourth amended petition for post-conviction relief," which was filed on June 13, 1989, and denied by the trial court on March 12, 1991. Although the pleadings are not in this record, it appears that Sample and McKay filed pro se petitions for post-conviction relief on June 28, 1989, and September 16, 1992, and that these petitions were denied by the trial court. This court alluded to additional petitions for post-conviction relief that had been filed, but it did not address them in the opinion of February 15, 1995.

prosecutors, and trial counsel violated the Tennessee and United States Constitutions.[3]

The trial court dismissed Sample's petition without an evidentiary hearing after ruling that he could not proceed with a post-conviction petition while an appeal from the denial of a prior post-conviction suit was pending with the Court of Criminal Appeals. The trial court dismissed McKay's petition on the ground that it had been filed after the expiration of the three year statute of limitations then applicable to post-conviction cases.[4] On appeal, the appellants argue that the trial court erred in dismissing their petitions without a hearing. They reiterate the claims asserted in their petitions and also argue that the trial court erred in denying their requests for state funded expert and investigative services.

After a thorough review of the record and authority, we conclude that the trial court erred in dismissing the petitions. The trial court's judgments are reversed, and these cases are remanded for further proceedings consistent with this opinion.

We will briefly summarize the convicting evidence. On August 29, 1981, Melvin Wallace, Jr., entered the L & G grocery store in Memphis, Tennessee. He saw two employees of the store, Benjamin Cooke and Steve Jones, both of whom he knew. He saw a man he later identified at trial as McKay holding a gun to Cooke's head, and he realized a robbery was in progress. When Wallace ran for the door, a second man, whom he identified at trial as Sample, shot him in the thigh and in the back. Wallace heard Sample demand money and threaten to kill everyone in the store. Shots followed. Wallace saw McKay shoot Cooke in the head. Wallace struggled with Sample, and Sample tried to shoot him once more. McKay and Sample then fled from the store. Cooke and Jones died from shots to the head but Wallace survived. Charles Rice testified that

---

[3] The specific allegations will be set forth herein.

[4] See Tenn. Code Ann. § 40-30-102 [repealed in Acts 1995, ch. 207 § 1].

he also saw the robbery in progress; he later identified Sample and McKay. The State introduced physical evidence relating to the crime and evidence purporting to link the appellants to other robberies committed in the area. The appellants were convicted of two counts of murder in the perpetration of armed robbery.

I

Sample's first issue is that the trial court erred in dismissing the petition due to the pendency of an appeal from a previous petition for post-conviction relief. He argues that the basis for dismissal was factually and legally erroneous. The State concedes that the trial court erred. We agree.

The record indicates that this petition was filed on January 27, 1995. The State's answer to the petition was filed on February 10, 1995; it asserted only that the appellant was not permitted to pursue the post-conviction case while a separate post-conviction suit was pending before the Court of Criminal Appeals. The trial court dismissed the petition on that basis on the same day, February 10, 1995. Five days later, our court filed its opinion in Michael E. Sample & Larry McKay v. State, No. 02C01-9104-CR-00062 (Tenn. Crim. App., Feb. 15, 1995, Jackson). Sample filed a reply with the trial court, asserting that the State's answer was factually and legally incorrect. The trial court, however, took no further action.

In Laney v. State, 826 S.W.2d 117 (Tenn. 1992), which is cited by both sides, the trial court dismissed a petition for post-conviction relief because a previously filed petition was pending on appeal. Our supreme court said that the Post-Conviction Procedure Act did not "as a matter of law ban multiple suits attacking the same conviction." Id. at 118. Instead, where "separate and distinct" suits are filed, a trial court has the jurisdiction to hear and determine the issues even if the appeal from a previous petition is pending before a higher court. Id.

4

Accordingly, the trial court erred in dismissing the petition on this basis. The court had the jurisdiction to consider Sample's petition, and it erred in failing to do so.

**II**

Sample and McKay argue that they were denied their rights to a fair trial and to due process under the Tennessee and United States Constitutions because the State presented false testimony at trial and suppressed exculpatory evidence. They assert that the grounds for relief were unknown and unavailable prior to the decision in Capital Case Resource Center of Tennessee, Inc. v. Woodall, No. 01A01-9104-CH-00150 (Tenn. App., Jan. 29, 1992, Nashville). In Woodall, the Court of Appeals held that police investigative records concerning a case under collateral attack were not exempt from disclosure under the Tennessee Public Records Law. Id. slip op. at 5; see also Tenn. Code Ann. § 10-7-501, et. seq. Thus, having obtained previously suppressed police records and statements, the appellants argue that the trial court should have conducted a hearing to further develop the issues.[5]

The State argues on appeal that Sample has not shown that he is entitled to relief on the substantive allegations, but it concedes that the trial court should have conducted further proceedings to consider the issue raised and any procedural defenses available to the State. The State argues that McKay failed to allege factual grounds in support of his claim and also failed to overcome procedural barriers to hearing the petition. The State maintains that the trial court correctly dismissed McKay's suit on the basis of the statute of limitations.

---

[5] The records containing the allegedly exculpatory evidence were attached to the appellants' post-conviction petitions. It is not clear from the petition exactly when the information was obtained.

**A**

We will summarize the factual allegations made by both Sample and McKay in support of their claims. They insist that the State's key witness at trial, Melvin Wallace, Jr., gave false testimony. Wallace testified, in pertinent part, that he wrestled with Sample, got a "good look" at Sample's face, and was "positive" of his identification of Sample at trial. Wallace admitted at trial that he failed to identify Sample in a physical line-up, but he said he was confused due to medication. Sample and McKay assert that they filed motions requesting exculpatory evidence prior to trial and that they received a three page statement Wallace made to authorities on August 31, 1981. They allege, however, that records obtained under the public records law revealed that the State withheld the following evidence:

> (1) On August 30, 1981, Wallace told Memphis Police Sgt. J.D. Welch that he did not notice subject #2 [allegedly Sample] during the robbery.

> (2) Wallace told Sgt. Welch that subject #1 [allegedly McKay] was the one who stood over him and shot him [and not subject #2, allegedly Sample, as Wallace testified at trial].

> (3) On November 17, 1981, Wallace told Memphis Police Officer J.D. Douglas that he could not identify the second man [allegedly Sample] in the robbery. Wallace only saw one of the men during the robbery, the one who shot him [allegedly McKay].

> (4) Wallace gave physical descriptions of the suspects, including their height, weight, and skin complexion, that did not match Sample or McKay.

The appellants allege that the State withheld additional exculpatory evidence that we summarize below:

> (1) Reports that indicated Sample's and McKay's fingerprints were not found at the L & G grocery store.

> (2) Information regarding other potential suspects who were alleged to be near the scene at the time of the crime, including Sammy House.

> (3) Descriptions of the perpetrators given to the police dispatcher that did not match Sample or McKay.

6

(4) Evidence that drugs were commonly sold from the L&G grocery store, which provided other possible motives and suspects for the crime.

(5) Descriptions of the perpetrators given to police officers by Charles Rice that did not match Sample or McKay.

(6) Inconsistent statements made by Charles Rice about the offense and what he observed.

(7) Exculpatory evidence relating to the other robberies in the area which the State tried to link to Sample and McKay.

The appellants' allegations clearly implicate constitutional rights. In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court held that the prosecution has the duty to furnish exculpatory evidence to the accused upon request. Exculpatory evidence may pertain not only to the guilt or innocence of the accused, but also to the punishment which may be imposed if the accused is convicted of the crime. State v. Marshall, 845 S.W.2d 228 (Tenn. Crim. App. 1992). Any "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. at 87. The duty to disclose extends to all "favorable information" regardless of whether the evidence is admissible at trial. State v. Marshall, 845 S.W.2d at 233; Branch v. State, 4 Tenn. Crim. App. 164, 168, 469 S.W.2d 533, 536 (1969).

Similarly, it is well established that the State's knowing use of false testimony to convict an accused violates the right to a fair and impartial trial as embodied in the due process clause of the fourteenth amendment to the United States Constitution and article 1, sections 8 and 9 of the Tennessee Constitution. Pyle v. Kansas, 317 U.S. 213, 216 (1942); State v. Spurlock, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993). When a witness answers questions on direct or cross examination falsely, the prosecution has an affirmative duty to correct the false testimony. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); State v. Spurlock, 874 S.W.2d at 617.

7

Accordingly, the allegations made by Sample and McKay clearly stated constitutional grounds for relief. Tenn. Code Ann. § 40-30-105. The key issues were whether the grounds were viable at this stage of the post-conviction proceedings. As we will discuss, the trial court did not give due consideration to these key issues.

**B**

**(1)**

Under the Post-Conviction Procedure Act governing these petitions, a petitioner could raise all constitutional claims except those which have been previously determined, waived, or barred by the statute of limitations. The statutory definitions for previous determination and waiver were as follows:

> (a) A ground for relief is 'previously determined' if a court of competent jurisdiction has ruled on the merits after a full and fair hearing.
>
> (b)(1) A ground for relief is 'waived' if the petitioner knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.
>
> (2) There is a rebuttable presumption that a ground for relief not raised in any such proceeding which was held was waived.

Tenn. Code Ann. § 40-30-112.

In House v. State, 911 S.W.2d 705 (Tenn. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1685 (1996), our supreme court held that "a 'full and fair hearing' sufficient to support a finding of previous determination occurs if a petitioner is given the opportunity to present proof and argument on the petition for post-conviction relief." Id. at 706. With regard to waiver, the court held:

> [T]he rebuttable presumption of waiver is not overcome by an allegation that the petitioner did not personally and therefore 'knowingly and understandingly,' waive the ground for relief. Waiver is to be determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney. Because there is no right to effective assistance of counsel in post-conviction proceedings, an allegation of ineffective assistance of prior post-conviction counsel does not

8

> preclude application of the defenses of waiver and previous
> determination.

Id. Thus, the court gave a broad interpretation to both statutory defenses.

The burden is on the post-conviction petitioner to allege facts in a petition to overcome the application of procedural barriers. State v. Smith, 814 S.W.2d 45, 48 (Tenn. 1991); see also Tenn. Code Ann. § 40-30-104(10). If a competently drafted petition is before the court, and "all pleadings, files and records of the case which are before the court conclusively show that the petitioner is entitled to no relief, the court may order the petition dismissed." Tenn. Code Ann. § 40-30-109(a)(1). However, in reviewing a post-conviction petition and determining whether it states a colorable claim for relief, the trial court must treat the allegations in the petition as true. Skinner v. State, 4 Tenn. Crim. App. 447, 472 S.W.2d 903, 904 (1971).

Both Sample and McKay alleged numerous grounds in their petitions to rebut these defenses, principally that they were unable to raise these issues prior to the Woodall decision. Additionally, they assert that as convicted felons they were unable to obtain public records even after the Woodall decision. See, e.g., In Re: Records Sought By Daniel B. Taylor v. Neil, No. 01AO1-9211-CH-00439 (Tenn. App., Mar. 17, 1993), perm. to appeal denied, (Tenn. 1993). Thus, they specifically assert that they did not personally make a "knowing and understanding" waiver of the issues.[6]

With regard to Sample, the State asserts in its brief that an exculpatory evidence issue was raised in Sample's June 1989 petition and that the use of false

---

[6] In this regard, Sample and McKay cite opinions from this court supporting a subjective test for waiver. See Paul Gregory House v. State, No. 03C01-9110-CR-00326 (Tenn. Crim. App., Mar. 28, 1994, Knoxville) & Donald Edward Johnson v. State, No. 02C01-9111-CR-00237 (Tenn. Crim. App., Mar. 23, 1994). As noted above, the supreme court's opinion in House, which was released after the briefing of this appeal, mandates an objective standard.

9

evidence issue was not raised on direct appeal or in a prior post-conviction petition.[7] The State correctly concedes, however, that Sample's petition rebutted the application of procedural barriers by asserting that the grounds for relief were unavailable before the Woodall decision. In other words, if Sample's allegations are accepted as true, the grounds for relief were unavailable due to the State's suppression of evidence. Thus, Sample could not have had an opportunity to present the issues for a ruling "on the merits" for the purpose of previous determination. Tenn. Code Ann. § 40-30-112(a). Likewise, the issues could not have been presented in a prior suit for the purpose of waiver. Tenn. Code Ann. § 40-30-112(b)(1); see Wooden v. State, 898 S.W.2d 752, 754 (Tenn. Crim. App. 1994); Stephen C. Parker v. State, No. 01C01-9008-CR-00188 (Tenn. Crim. App., Feb. 26, 1991, Nashville), perm. to appeal denied, (Tenn. 1991). Moreover, the trial court dismissed Sample's suit on a legally incorrect basis without giving any consideration to the allegations or the possible statutory defenses. Accordingly, as the State concedes on appeal, the defenses of waiver and previous determination were rebutted by Sample.

With regard to McKay, the State makes no concessions. Instead, the State argues on appeal that the exculpatory evidence issue was raised in a petition filed in June of 1989 and that the use of false evidence issue was raised in a prior petition filed on September 16, 1992. As both suits were dismissed by the trial court, the State suggests that the issues were previously determined. These contentions are not supported by the record.[8] Moreover, the State did not address McKay's allegations that the grounds for relief could not have been raised earlier or heard on the merits due to the State's suppression of the evidence and the unavailability of the evidence prior to Woodall. Thus,

---

[7] We initially note that the State failed to raise the defenses of waiver and previous determination in its answers to the petitions, which could render the defenses waived on appeal. See State v. James Richard Perry, No. 03C01-9401-CR-00016 (Tenn. Crim. App., July 24, 1995, Knoxville). In any event, we conclude that the State has not shown that these defenses were substantiated by the record.

[8] Moreover, the State again failed to raise these defenses in its answer to McKay's petition. The pleadings attached to the State's brief do not constitute evidence for our consideration.

we conclude that McKay, like Sample, rebutted the defenses of waiver and previous determination.

**(2)**

The State also argues that Sample and McKay filed their petitions after the expiration of the three year statute of limitations then applicable to post-conviction cases. While the State concedes that Sample's suit should be remanded for further consideration, it maintains that McKay's suit was properly dismissed. The relevant statute provided:

> [a] prisoner in custody under sentence of a court of this state must petition for post-conviction relief under this chapter within three (3) years of the date of final action of the highest state appellate court to which an appeal is taken or consideration of such petition shall be barred.

Tenn. Code Ann. § 40-30-102 [repealed by Acts 1995, ch. 207, §1]. The statute, which took effect July 1, 1986, was applied prospectively by our courts. State v. Masucci, 754 S.W.2d 90 (Tenn. Crim. App. 1988); Abston v. State, 749 S.W.2d 487 (Tenn. Crim. App. 1988). Thus, defendants like McKay and Sample, whose cases were final prior to the enactment of the statute, were given three years from July 1, 1986, in which to seek post-conviction relief.

Sample and McKay allege that application of the statute would deny them a reasonable opportunity to have the suppression of exculpatory evidence and the use of false testimony issues considered inasmuch as they were not known or available until after the expiration of the three year period. They cite Burford v. State, 845 S.W.2d 204 (Tenn. 1992), in which the supreme court said:

> [B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner. The question, then, is 'whether the state's policy reflected in the statute affords a fair and reasonable opportunity for ... bringing ... suit.' Pickett v. Brown, 638 S.W.2d 369, 376 (Tenn. 1982), rev'd on equal protection grounds, 462 U.S.1, 103 S.Ct 2199, 76 L.Ed. 2d 372 (1983). In other words, the test is whether the time period

11

> provides an applicant a reasonable opportunity to have the claimed issue heard and determined. Michel v. Louisiana, 350 U.S. 91, 93, 76 S.Ct. 158, 160, 100 L.Ed 83, 89 (1955).

Burford v. State, 845 S.W.2d at 208 (emphasis added; citation omitted). As a result, the court in Burford recognized that "it is possible that under the circumstances of a particular case, application of the statute may not afford a reasonable opportunity" to litigate an issue. Id.

Burford was clarified by the supreme court in Sands v. State, 903 S.W.2d 297 (Tenn. 1995). In certain cases, "due process prohibits the strict application of the post-conviction statute of limitations to bar a petitioner's claim when the grounds for relief, whether legal or factual, arise after the 'final action of the highest state appellate court to which an appeal is taken'-- or, in other words, when the grounds arise after the point at which the limitations period would normally have begun to run." Id. at 301 (emphasis added). The court set forth the following process in analyzing Burford situations:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim. In making this final determination, courts should carefully weigh the petitioner's liberty interest in 'collaterally attacking constitutional violations occurring during the conviction process,' Burford, 845 S.W.2d at 207, against the State's interest in preventing the litigation of 'stale and fraudulent claims.' Id. at 208.

Sands, 903 S.W.2d at 301; see also Caldwell v. State, 917 S.W.2d 662 (Tenn. 1996).

Here, the appellants' direct appeals were decided in 1984. The effective date of the statute of limitations, as noted, was July 1, 1986. Given the prospective application of the statute, the appellants had three years from the effective date in which to file post-conviction petitions. They have alleged that the legal and factual grounds in support of their exculpatory evidence and false testimony issues arose after the statute had

12

commenced to run and then expired. Thus, in accepting the allegations as true, it would appear that the appellants have had no reasonable opportunity in which to litigate the issues despite prior post-conviction suits. Moreover, in balancing the interests of the parties, it is obvious that the rights affected-- due process and a fair trial-- implicate personal trial rights of the appellants. See Caldwell v. State, 917 S.W.2d at 667-68. As such, the grounds raised by Sample and McKay directly affect "the justice or integrity of the conviction or sentence." Id. at 667 (emphasis in original).

We note that a Brady issue was envisioned as a later arising ground in Justice Daughtrey's concurring opinion in Burford: "[L]egitimate grounds for relief might come to light long after the three year period has run, as in the case of suppression of material evidence by the prosecution that is concealed for many years after the trial." See Burford v. State, 845 S.W.2d at 211 (Daughtrey, J., concurring). Similarly, in Arthur L. Armstrong v. State, No. 01C01-9311-CR-00403 (Tenn. Crim. App., Dec. 8, 1994, Nashville), a habeas corpus petitioner raised a late-arising exculpatory evidence issue. Our court noted that the issue could not be raised in a state habeas corpus case but indicated that the petitioner could again seek post-conviction relief. The court said:

> The state concedes, and we agree, that under the rule of Burford v. State, 845 S.W.2d 204 (Tenn. 1992), the three-year statute of limitations would not apply to a petition raising allegations of a recently discovered Brady issue. In Burford, the Supreme Court balanced the governmental interest in preventing litigation of stale or fraudulent claims and the interest of administrative efficiency against the private interests of the defendant and concluded that the governmental interests did not outweigh the infringement of a constitutional right affecting life or liberty. 845 S.W.2d at 209. In a concurrence to Burford, Justice Daughtrey hypothesized a situation in which the suppression of material evidence by the prosecution is concealed for many years after trial and concluded that the application of a statute of limitations in such a situation would be a violation of due process. Id. at 211.

Armstrong, slip op. at 7.

13

Likewise, in Wooden v. State, 898 S.W.2d at 753, a petitioner alleged in his third petition for post-conviction relief that the state had suppressed exculpatory evidence. He argued that the issue was not previously available because he had been denied access to records under the Public Records Law. Our court, after discussing possible exceptions to the three year statute of limitations under Burford, remanded the case to the trial court with the following instructions:

> Upon remand, the trial court should consider first whether the evidence is in fact exculpatory. If so, it can then determine whether the evidence supports the application of the Burford due process exception to the statute of limitations. If each of these questions is resolved in the affirmative, the trial court may then consider appropriate relief.

898 S.W.2d at 755.

Accordingly, we conclude that the State has not shown that the statute of limitations barred the appellants' petitions, insofar as these grounds are concerned. To the contrary, we believe that a hearing is necessary to further consider the issue.

## C

In summary, we conclude that Sample and McKay have stated constitutional grounds for relief with regard to the use of false testimony and suppression of exculpatory evidence. The appellants' allegations as to why the claims were not waived, previously determined, or barred by the statute of limitations rebutted the application of these statutory defenses. The State made no effort in the trial court to show that the defenses were applicable and it has not substantiated its allegations on appeal. Moreover, the State did not comply with its statutory duty to compile those portions of the record necessary to resolve the issues. Tenn. Code Ann. § 40-30-114.[9] Thus, we conclude that the cases must be remanded to the trial court for further consideration. If the appellants' allegations

---

[9] Both Sample and McKay raise the State's failure to comply with its statutory duty in this regard as separate issues on appeal. On remand, the State shall comply with the relevant statutes. Tenn. Code Ann. § 40-30-114.

are substantiated, and no statutory defenses are shown to apply, the trial court shall consider the merits of the issues in accordance with the applicable authority.

## III

Sample and McKay next argue that they were entitled to post-conviction relief under State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992). In Middlebrooks, our supreme court held that "when a defendant is convicted of first-degree murder solely on the basis of felony murder, the aggravating circumstance set out in Tenn. Code Ann. § 39-2-203(i)(7)(1982) and §39-13-204(i)(7)(1991) does not narrow the class of death eligible murderers sufficiently under the Eighth Amendment to the United States Constitution and Article I, section 16 of the Tennessee Constitution because it duplicates the elements of the offense." Id. at 346.[10] The appellants allege that the factor was erroneously applied in their cases, that harmless error analysis is inappropriate when reviewing errors made in a capital sentencing proceeding, and that, assuming a harmless error analysis must be applied, the Middlebrooks error was not harmless under the facts and circumstances of these cases.

Middlebrooks was decided on September 8, 1992. The constitutional rule announced therein was later held to apply retroactively in post-conviction cases. Barber v. State, 889 S.W.2d 185 (Tenn. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995); see also Workman v. State, 868 S.W.2d 705 (Tenn. Crim. App. 1993). In Barber, the court said:

> When an aggravating circumstance is improperly injected into the process by which the juror must weigh aggravating and mitigating circumstances to determine a sentence, the integrity and reliability of the sentencing process is jeopardized because the death penalty may not be reserved for only the most culpable defendants. For this reason, we apply Middlebrooks retroactively....

---

[10] The court later clarified that its decision was based independently upon Article I, section 16 of the Tennessee Constitution. State v. Howell, 868 S.W.2d 238 (Tenn. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994).

Id. at 187.

The State concedes that the issue has not been waived or previously determined with regard to either Sample or McKay.[11] Moreover, although Middlebrooks was decided well after the statutory period of limitations had commenced and expired, the State acknowledges that it is a later-arising ground involving significant liberty interests to the appellants. As such, application of the three year statute of limitations would deny the appellants a reasonable opportunity to have the claim litigated. See Sands v. State, 903 S.W.2d at 301; Burford v. State, 845 S.W.2d at 208. Additionally, we note that the appellants' petitions were filed within three years of the Middlebrooks opinion. See Lawrence Moore v. State, No. 03C01-9504-CR-00122 (Tenn. Crim. App., Feb. 14, 1996, Knoxville)(petition filed within three years of opinion announcing a new constitutional rule); Rudy Myers v. State, No. 01C01-9308-CC-00270 (Tenn. Crim. App., Jan. 20, 1994, Nashville)(petition filed within three years of a new, retroactively applied constitutional rule). Thus, the claim under Middlebrooks was a viable ground for post-conviction relief, and the trial court erred in dismissing the petitions without considering the issues.

With regard to the substance of the issue, the appellants concede that the original sentencing jury found aggravating circumstances in addition to the felony murder factor.[12] Nonetheless, the appellants contend that a new sentencing hearing is mandated

---

[11] On appeal, the State notes that McKay and Sample filed pro se motions to have a Middlebrooks issue included with a prior post-conviction appeal to this court. A judge of this court granted the motion on October 23, 1992; however, the opinion filed by this court on February 15, 1995, does not address Middlebrooks. Thus, the State correctly concedes that the issue has not been waived or previously determined.

[12] As to Sample, the jury also found that he created a great risk of death to two or more persons other than the victims murdered, and that he committed the murder to avoid, interfere with, or prevent a lawful arrest or prosecution. See Tenn. Code Ann. § 39-2-203(i)(3) & (i)(6)(presently §39-13-204(i)(3) & (i)(6)). As to McKay, the jury also found that he had a prior conviction for a felony involving violence to a person, that he created a great risk of death to two or more persons other than the victims murdered, and that he committed the murders to avoid, interfere with, or prevent a lawful arrest or prosecution. Tenn. Code Ann. § 39-2-203(i)(2), (i)(3), & (i)(6) (presently §39-13-204(i)(2), (i)(3), & (i)(6)).

under Tennessee constitutional and statutory law because an appellate court cannot reweigh aggravating and mitigating factors or otherwise conduct a harmless error analysis. Moreover, the appellants argue that even if a harmless error analysis is applied, the Middlebrooks errors were not harmless under either Chapman v. California, 386 U.S. 18 (1967) or State v. Howell, 868 S.W.2d at 260.[13] The appellants cite Rickman v. Dutton, 864 F. Supp. 686 (M.D. Tenn. 1994) in support of their position.

In State v. Howell, our supreme court held that a Middlebrooks violation was subject to a harmless error analysis. In undertaking such an analysis, an appellate court should consider "the number and strength of the remaining aggravating circumstances, the prosecutor's argument at sentencing, the evidence admitted to establish the invalid aggravator, and the nature, quality, and strength of mitigating evidence." Id. at 261. The court further said:

> [E]ven more crucial than the sum of the remaining aggravating circumstances is the qualitative nature of each circumstance, its substance and persuasiveness, as well as the quantum of proof supporting it. In that respect, the Tennessee statute assigns no relative importance to the various statutory aggravating circumstances. By their very nature, and under the proof in certain cases, however, some aggravating circumstances may be more qualitatively persuasive and objectively reliable than others....

Id. at 260-61. Upon reviewing these factors, an appellate court may uphold a death sentence if it concludes "beyond a reasonable doubt that the sentence would have been the same had the jury given no weight to the invalid felony murder aggravating factor...." Id. at 262 (citing Stringer v. Black, 503 U.S. 222 (1992)). Since its decision in Howell, the

---

[13] As a corollary to this issue, the appellants argue that Chapman, and not Howell, sets forth the proper test to determine harmless error, that is, whether the State proves "beyond a reasonable doubt that the error...did not contribute to the verdict obtained." Chapman, 386 U.S. at 24. Moreover, the appellants argue that the test formulated in Howell violates the Tennessee and United States Constitutions. In Howell, our supreme court considered Chapman and other applicable United States Supreme Court cases in formulating its harmless error analysis. Id. at 262 (citing, Stringer v. Black, 503 U.S. 222 (1992), Sochor v. Florida, ___ U.S. ___, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992), Clemons v. Mississippi, 494 U.S. 738 (1990), & Satterwhite v. Texas, 486 U.S. 249 (1988)). Thus, we view Howell as consistent with the controlling authority, and we reject the appellants' contentions.

supreme court has applied the harmless error analysis on numerous occasions. State v. Smith, 893 S.W.2d 908, 925 (Tenn. 1994), cert. denied, ___ U.S. ___, 116 S.Ct. 99, 133 L.Ed.2d 53 (1994); Barber v. State, 889 S.W.2d at 187-189; State v. Nichols, 877 S.W.2d 722, 738 (Tenn. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); State v. Cazes, 875 S.W.2d 253, 269-70 (Tenn. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995).

Thus, our supreme court has not only adopted a harmless error analysis for this type of case, it has also applied the analysis on numerous occasions. As an intermediate appellate court, we are bound to follow our supreme court precedent over the federal district court case of Rickman v. Dutton, supra, which is cited by the appellants. See State v. Bowers, 673 S.W.2d 887, 889 (Tenn. Crim. App. 1984); see also Rotunda & Nowak, Treatise on Constitutional Law: Substance & Procedure, 2nd, §1.6(c)("because the state courts are not 'lower courts,' they are not required to follow the interpretations of lower federal courts, such as the Court of Appeals with jurisdiction over their state territory, even on matters relating to the Constitution of the United States."). We therefore reject the appellants' contentions with respect to the propriety and manner of a harmless error review in death penalty sentencing procedures by an appellate court. Given the presence of a Middlebrooks error, a harmless error analysis is not only appropriate but is mandated by our supreme court.

While not conceding any of their other arguments, Sample and McKay contend that the error was not harmless under Chapman or Howell. They argue that there was significant mitigating evidence at trial, that the prosecution focused its arguments and its evidence on the invalid aggravating factor, and that the evidence supporting the remaining aggravating factors was weak or altogether insufficient. The State contends that the error was harmless. Because of the scant record before our court and because of the remand on other issues, we conclude that the issues should be considered first by the trial

court.  The trial judge is in the better position to review the record of the proceedings, to hear the arguments of the parties, and to undertake the initial review of the Middlebrooks error under the analysis set forth in Howell.

**IV**

The appellants contend that they were entitled to post-conviction relief because the jury instructions at trial equated "reasonable doubt" with "moral certainty" and allowed the jury to convict if it could "let the mind rest easily on the certainty of guilt."  The appellants argue that the instruction relieved the State of its burden of proof in violation of the Tennessee and United States Constitutions.  The appellants claim that the issue was not raised earlier and is not barred by the statute of limitations because it is based on the recent United States Supreme Court's opinions in Victor v. Nebraska, 511 U.S. 1 (1994) and Sandoval v. California, 511 U.S. 1 (1994).  In addition, the appellants rely on Rickman v. Dutton, supra, in which the district court held that a similarly worded reasonable doubt instruction was unconstitutional.  The State, however, maintains that the appellants are not entitled to post-conviction relief on this ground.

Although the State did not raise specific procedural defenses to this claim in its answer to the petitions, we have concluded that it is without merit under prior opinions of our court.  In Pettyjohn v. State, 885 S.W.2d 364 (Tenn. Crim. App. 1994), the post-conviction petitioner raised a similar issue:

> [T]he United States Supreme Court rendered an opinion in two cases in which it analyzed the relationship of reasonable doubt to the 'moral certainty' phrase.  Victor v. Nebraska and Sandoval v. California, ___ U.S. ___, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).  The Court indicated that the phrase 'moral certainty' may have lost its nineteenth century meaning relative to the level of certainty humanly attainable in matters relating to human affairs.  It recognized that a modern jury, unaware of the historical meaning, might understand the phrase, in the abstract, to mean something less than the very high level of determination constitutionally required in criminal cases.  However, although it expressed criticism of the continued use of the 'moral certainty' phrase, the Court did not actually hold that it was constitutionally inappropriate, but

19

> looked to the full charge to the jury to determine if the phrase
> was placed in such a context that a jury would understand that
> it meant certainty with respect to human affairs.

Id. at 365-66 (emphasis added). The court concluded that "the instructions as a whole did not make it reasonably likely that the jury understood the words 'moral certainty' either as suggesting a standard of proof lower than due process requires or as allowing conviction upon factors other than the evidence." Id. at 366. Thus, the court held that the instruction did not violate due process. Id. Similarly, our court has continued to reject Victor-Sandoval claims. See State v. Sexton, 917 S.W.2d 263, 266 (Tenn. Crim. App. 1995); State v. Michael Dean Bush, No. 03C01-9403-CR-00094 (Tenn. Crim. App., Feb. 12, 1996, Knoxville)(presently before the supreme court pursuant to Tenn. Code Ann. § 39-13-206(a)(1)); State v. Ricky Thompson, No. 03C01-9406-CR-00198 (Tenn. Crim. App., Jan. 24, 1996, Knoxville)(application for permission to appeal pending).

Accordingly, the appellants have failed to show a violation of constitutional due process. We are aware that the federal district court granted habeas corpus relief on this issue in Rickman v. Dutton, 864 F.Supp. at 710. As we noted in the preceding issue, however, we are not required to follow Rickman over the decisions of our court. Thus, we believe that the appellants are not entitled to post-conviction relief on this issue.

**V**

The appellants contend that the trial court erred in summarily dismissing numerous grounds alleging deprivations of constitutional rights under the fifth, sixth, eighth and fourteenth amendments to the United States Constitution and Article I, sections 8, 9, 16, and 17 of the Tennessee Constitution. The appellants insist that they did not "knowingly and understandingly" waive any of the issues and that the statute of limitations should not apply to bar the claims from being heard.[14] The problem with the appellants'

---

[14] Because we hold that the issues were either waived or previously determined, we need not address the appellants' allegations with regard to the statute of limitations.

claim is that they rely on the "subjective" test for waiver that the supreme court rejected in House v. State, 911 S.W.2d at 707. As discussed earlier, House adopted a broad, objective test for waiver that also imputes the actions or omissions of counsel to a post-conviction petitioner. It is with this standard that we review the appellants' issues.

The following issues asserted by Sample are waived because they were not raised on direct appeal: that a .32 caliber handgun was obtained pursuant to an unlawful search of a vehicle and that the prosecution engaged in misconduct through its questioning of witnesses during the sentencing phase. Tenn. Code Ann. § 40-30-112(b)(1) & (b)(2).

The following grounds argued by both Sample and McKay are likewise waived: that the trial court erred in instructing the jury that it need not find the element of malice to convict for felony murder; that the trial court erred in failing to instruct the jury that it had to find all of the elements alleged in the indictment to convict for felony murder; that trial counsel were ineffective due to a conflict of interest; that the State introduced prejudicial victim-impact evidence during the guilt phase of the trial; that trial counsel were ineffective because the appellants were made to sit in the second row during the trial; that the prosecution made improper closing arguments during the guilt and sentencing phases of the trial; that Tenn. Code Ann. § 39-2-203(i)(3) and (i)(6) were constitutionally defective and not supported with sufficient evidence; that the trial court erred in instructing the jury that its verdict should not be influenced by sympathy; that the trial court erred in instructing the jury on the range of penalties for lesser included offenses; that the trial court erred in instructing the jury that witnesses are presumed to tell the truth; that the jury's verdict was prejudiced by extraneous influences; that the trial court erred in excluding jurors for religious reasons; that the trial court erred in excluding juror Bishop; that trial and appellate counsel were ineffective for failing to raise the above errors; and that the cumulative effect of the errors denied a fair trial. In sum, the issues were not raised on direct appeal or in

21

prior post-conviction suits.  Thus, the issues are without merit.  Tenn. Code Ann. § 40-30-112(b)(1) & (b)(2).

The following issues were raised by the appellants in earlier proceedings and were previously determined: that the trial court erred by instructing the jury that it could presume malice from the use of a deadly weapon and the death of the victim; that the trial court erred in failing to instruct the jury on the effects of a non-unanimous verdict; that trial counsel were ineffective; and that the trial court erred in failing to sever the trials.  Similarly, Sample's contention that Wallace's identification of him was unduly suggestive and, therefore, unconstitutional, was addressed on direct appeal.[15]  Thus, the issues are without merit.  Tenn. Code Ann. § 40-30-112(a).

Finally, we note that the appellants also allege that the foregoing issues should not be procedurally barred due to the inactions of prior post-conviction counsel.  This claim has been foreclosed by House, in which the court held that the actions or inactions of post-conviction counsel are imputed to a petitioner.  Id. at 707.  Moreover, the ineffectiveness of post-conviction counsel is not a separate ground for post-conviction relief.  Id. at 712 (citing Murray v. Giarratano, 492 U.S. 1, 10 (1989) & Pennsylvania v. Finley, 481 U.S. 551, 554-55 (1987)).

**VI**

Sample contends that the trial court erred in denying his "motion to proceed ex parte in seeking investigative and expert services."  The motion asserted that funds for investigative and expert services were necessary to prepare the post-conviction issues and to conduct a full and fair hearing.  The motion further asserted that statutory and constitutional principles mandated that the need for the funds be shown in an ex parte

_____

[15] We would note, however, that the identification issue may be affected by the trial court's ruling as to the exculpatory evidence claim.

22

hearing.[16] McKay did not file a specific motion for an ex parte proceeding; however, he asserts that the trial court erred in denying his request for state funded expert and investigative services. The State did not address the requests in its answers to the petitions, and the trial court did not make a specific ruling in either case.

On appeal, the appellants rely in part on this court's opinions in Owens v. State, No. 02C01-9111-CR-00259 (Tenn. Crim. App., Mar. 25, 1994, Jackson) and Payne v. State, No. 02C01-9204-CR-00094 (Tenn. Crim. App., Mar. 25, 1994, Jackson). This court had held that a capital post-conviction petitioner is not entitled to an ex parte proceeding but that, upon a sufficient showing, a petitioner may receive funds for expert services needed to establish a constitutional violation. The State also relies on the Owens--Payne cases; it argues that the appellants were not entitled to an ex parte hearing and did not show a particularized need for state funded experts.

As noted by the parties, the supreme court granted applications to appeal in both Owens and Payne, and it released its opinion after the briefing in this appeal. In Owens v. State, 908 S.W.2d 923 (Tenn. 1995), the supreme court ruled, as a matter of statutory construction, that the ex parte provisions of Tennessee Code Annotated section 40-14-207(b) are to be applied in post-conviction death penalty cases. Id. at 928. The court said:

> To obtain an ex parte hearing, a capital post-conviction petitioner must submit a written motion to the trial court, alleging why under the particular facts and circumstances of the case, investigative or expert services are necessary to ensure the protection of the petitioner's constitutional rights. A bare allegation that support services are needed is not sufficient. In addition, the motion must include: (a) the name of the proposed expert or service; (b) how, when and where the examination is to be conducted or the services are to be performed; (c) the cost of the evaluation and report thereof;

---

[16] The motion cited Tennessee Code Annotated section 40-14-207(b), the sixth, eighth, and fourteenth amendments to the United States Constitution, and article I, sections six through eleven, fourteen, sixteen, and seventeen of the Tennessee Constitution.

23

and (d) the cost of any other necessary services, such as court appearances. Tenn. Sup. Ct. Rule 13, §2(b)(10). Once the petitioner satisfies these threshold procedural requirements, the trial court must conduct an ex parte hearing on the motion.

Id. at 928. Moreover, the court said that, upon showing a "particularized need" requiring expert or investigative services to ensure the protection of a constitutional right, a petitioner may receive state funding for such services. Id.

Obviously, Owens had not been decided when the appellants' post-conviction petitions were filed; however, supreme court Rule 13, §2(b)(10), which was cited in Owens, governed requests for ex parte hearings. In this regard, we note that McKay did not even request an ex parte hearing much less comply with Rule 13. Moreover, McKay made only a bare allegation that he needed funds for expert and investigative services. McKay's request, therefore, fell far short of showing a particularized need for relief. Sample filed a specific request for the ex parte hearing and cited numerous grounds in support of the request, including the statute interpreted in Owens; however, he too failed to set forth detailed allegations in support of the motion as required by Rule 13. Thus, we conclude that neither Sample nor McKay showed he was entitled to relief on this ground.[17]

**VII**

In summary, the judgments in both cases are reversed and the cases are remanded to the trial court for further proceedings consistent with this opinion.

---

[17] Moreover, we note that the appellants allege that numerous issues should be, in effect, re-litigated with the benefit of funds under Owens. We reject this contention. There is nothing in Owens to suggest that any issues previously determined or waived may be revived in this manner.

                                     _____

                                     William M. Barker, Judge

_____

Paul G. Summers, Judge

_____

David H. Welles, Judge

25