IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1997 SESSION



| | | |
|---|---|---|
| RONALD RICHARD HARRIES, | ) | No.03C01-9607-CR-00276 |
| | ) | |
| Appellant | ) | |
| | ) | SULLIVAN COUNTY |
| V. | ) | |
| | ) | HON. LYNN W. BROWN, |
| STATE OF TENNESSEE, | ) | JUDGE |
| | ) | |
| Appellee | ) | (Post-Conviction - Death Penalty) |
| | ) | |
| | ) | |

For the Appellant:

Michael J. Passino
Lassiter, Tidwell & Hildebrand
213 Fifth Avenue, North
Nashville, TN 37219

Peter Alliman
Lee & Alliman
Highway 411 North
P.O. Box 425
Madisonville, TN 37354

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Amy Tarkington
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493
(On appeal)

Glenn R. Pruden
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493
(At hearing)

H. Greeley Wells, Jr.
District Attorney General
P.O. Box 526
Blountville, TN 37617

OPINION FILED: _____

AFFIRMED

William M. Barker, Judge

**OPINION**

In this capital case, appellant, Ronald Richard Harries, appeals as of right the denial by the Sullivan County Criminal Court of his second petition for post-conviction relief. He argues that the trial court erred in finding that the jury's application of the felony-murder aggravating circumstance in violation of the rule announced in State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), was harmless beyond a reasonable doubt. In that respect, he also contends the trial court erred by concluding that evidence of his alcohol and drug intoxication at the time of the offense was not a mitigating factor within the statute and that appellant's history of drug addiction was not sufficient mitigating evidence which would have resulted in a lesser punishment absent the application of the invalid aggravating circumstance.

After a thorough review of the record, including the trial transcript and the transcript from the hearing on appellant's first post-conviction petition, we are of the opinion that the use of the invalid felony-murder aggravating circumstance was harmless beyond a reasonable doubt. The trial court's denial of appellant's petition is affirmed.

**PROCEDURAL HISTORY**

Appellant was convicted in 1981 of the felony murder of Rhonda Greene, an eighteen-year-old cashier at a convenience store in Kingsport.[1] At the sentencing phase of the trial, the jury imposed a sentence of death, finding the presence of two statutory aggravating circumstances which were not outweighed by the mitigating evidence. Specifically, the jury found that the defendant had been previously convicted of one or more felonies, other than the present charge, which involved the use or threat of violence to the person, and the murder was committed while the defendant was engaged in committing a robbery. See Tenn. Code Ann. §39-

---

[1]A full recitation of the factual circumstances surrounding the offense is contained in the supreme court's opinion in appellant's case on direct appeal. State v. Harries, 657 S.W.2d 414 (Tenn. 1983).

2

2404(i)(2), (7) (Supp. 1981). On direct appeal to the supreme court, appellant's conviction and death sentence were affirmed. State v. Harries, 657 S.W.2d 414 (Tenn. 1983). No permission was sought for a writ of certiorari to the United States Supreme Court.

Appellant's first post-conviction petition was filed in March of 1986. That petition raised thirty-five (35) issues, including claims of ineffective assistance of counsel at trial and on appeal; unconstitutionality of the Tennessee death penalty statute; numerous errors in voir dire and the selection of grand and petit juries in Sullivan County; inadequate evaluation of appellant's mental condition; and incorrect application of the felony-murder aggravating circumstance. Following a three-day evidentiary hearing, the trial court denied relief on the petition. On appeal, that judgment was affirmed by this Court. Ronald Richard Harries v. State, No. 833 (Tenn. Crim. App. at Knoxville, August 29, 1990), perm. to appeal denied (Tenn. 1991).

The current petition was filed September 9, 1993, alleging constitutional error in the application of the felony-murder aggravating circumstance to appellant's conviction for felony murder. See State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992). No other grounds for relief were raised. After conducting an evidentiary hearing, the trial court issued a thorough statement of its findings of fact and conclusions of law.

The trial court found: (1) that the evidence supporting the remaining valid aggravating factor was uncontradicted and overwhelming; (2) that the prosecutor placed little emphasis on the invalid aggravator during his closing argument; and (3) that no additional evidence supporting the invalid aggravating circumstance was introduced at the sentencing phase. In evaluating the evidence offered in mitigation, the trial court found that any mitigation from appellant's drug addiction was negated by proof that appellant committed numerous crimes to support his habit. The trial court further found that evidence that appellant was under the influence of drugs and alcohol at the time of the crime was insufficient to demonstrate that he was substantially impaired. See Tenn. Code Ann. §39-2404(j)(8) (Supp. 1981). It also

found that appellant's claims of remorse for the crime were belated and lacked sincerity and were not supported by the factual record. However, the trial court did accord some weight to that claim and also to appellant's claim that the shooting was accidental. The trial court also considered a list of ten additional mitigating factors submitted after the filing of the petition. Considering all the above, the trial court concluded that the Middlebrooks error was harmless beyond a reasonable doubt. See State v. Howell, 868 S.W.2d 238 (Tenn. 1993), cert. denied 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). Appellant's petition for relief was denied.

## STANDARD OF REVIEW

The parties have raised the question of the proper standard of review for this Court to apply in reviewing the Howell harmless error analysis performed by the trial court. A review of Tennessee case law reveals that this question has not been squarely addressed. Our supreme court has had eight opportunities to consider whether application of the felony-murder aggravator in violation of Middlebrooks was harmless beyond a reasonable doubt. See State v. Hines, 919 S.W.2d 573 (Tenn. 1995), cert. denied ___ U.S. ___, 117 S.Ct. 133, 136 L.Ed.2d 82 (1996); State v. Walker, 910 S.W.2d 381 (Tenn. 1995), cert. denied ___ U.S. ___, 117 S.Ct. 88, 136 L.Ed.2d 45 (1996); State v. Hartman, 896 S.W.2d 94 (Tenn. 1995); State v. Smith, 893 S.W.2d 908 (Tenn. 1994), cert. denied ___ U.S. ___, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995); Barber v. State, 889 S.W.2d 185 (Tenn. 1994), cert. denied ___ U.S. ___, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995); State v. Nichols, 877 S.W.2d 722 (Tenn. 1994), cert. denied, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); State v. Cazes, 875 S.W.2d 253 (Tenn. 1994), cert. denied 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995); State v. Howell, 868 S.W.2d 238 (Tenn. 1993), cert. denied 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). Procedurally, however, it has not had the opportunity to review findings of fact and conclusions of law following a trial court's Howell harmless error analysis. In fact, the supreme court has reviewed the

4

issue in the context of post-conviction only twice and both times without the benefit of a post-conviction court's findings on the issue. See Hartman, 896 S.W.2d at 96; Barber, 889 S.W.2d at 186.

This Court has rendered decisions in capital cases in this procedural posture at least twice. See Tommy L. King v. State, No. 01C01-9512-CC-00415 (Tenn. Crim. App. at Nashville, February 12, 1997), appeal granted (Tenn. July 7, 1997); Michael J. Boyd v. State, No. 02C01-9406-CR-00131 (Tenn. Crim. App. at Jackson, February 21, 1996), appeal granted (Tenn. November 25, 1996). In Boyd, a panel of this Court discussed the trial court's analysis of the Howell issue, but did not explicitly rely upon the trial court's findings or discuss the standard of review. The trial court's findings were not addressed in King.

We are mindful of the well-established standard of review generally applicable to denials of post-conviction petitions. The trial court's findings of fact and conclusions of law are given the weight of a jury verdict and accorded a presumption of correctness. This Court is bound by those factual findings unless the evidence within the record preponderates against the judgment. See, e.g., Davis v. State, 912 S.W.2d 689, 697 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993); Adkins v. State, 911 S.W.2d 334, 354 (Tenn. Crim. App. 1994); Alley v. State, 882 S.W.2d 810, 817 (Tenn. Crim. App. 1994); Rhoden v. State, 816 S.W.2d 56, 59-60 (Tenn. Crim. App. 1991); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991); Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990); Teague v. State, 772 S.W.2d 932, 933-34 (Tenn. Crim. App. 1988); Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988); Vermilye v. State, 754 S.W.2d 82, 84 (Tenn. Crim. App. 1987); Buford v. State, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983); Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978), cert. denied 441 U.S. 947, 99 S.Ct. 2170, 60 L.Ed.2d 1050 (1979); Long v. State, 510 S.W.2d 83, 86 (Tenn. Crim. App. 1974). The supreme court recently applied this standard of review in a capital case when

5

reviewing a lower court's determination on the ineffective assistance of counsel. <u>Goad v. State</u>, 938 S.W.2d 363, 368-69 (Tenn. 1996).

Applying these principles, we conclude that the factual findings of the trial court inherent in a harmless error analysis are entitled to a presumption of correctness. For example, the emphasis that the prosecutor placed on the invalid aggravating circumstance in closing argument, as well as the number of remaining valid aggravating circumstances, should be considered factual findings. Determinations on the quality of mitigating evidence are also entitled to the presumption. <u>See</u> <u>Parker v. Dugger</u>, 498 U.S. 308, 111 S.Ct. 731, 737-38, 112 L.Ed.2d 812 (1991) (concluding that a state appellate court's determination that the trial judge found no mitigating circumstances in a capital trial is an issue of historical fact in habeas corpus proceedings and entitled to presumption of correctness if fairly supported by the record).

However, a trial court's ultimate conclusion of harmlessness is not entitled to a presumption of correctness, but rather requires a *de novo* review. <u>See</u> <u>Yates v. Evatt</u>, 500 U.S. 391, 111 S.Ct. 1884, 1894, 114 L.Ed.2d 432 (1991) (evaluating the harmlessness of a constitutional error requires consideration of the entire record) (citations omitted); <u>Arizona v. Fulminante</u>, 499 U.S. 279, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991) (stating that the Supreme Court has power to review the record *de novo* to determine error's harmlessness). This is due, in part, because the issue of harmlessness is a mixed question of law and fact. <u>See</u> <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1496 (3d Cir.), <u>cert.</u> <u>denied</u> 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994) (finding that state court's conclusion of harmlessness is a mixed question of law and fact, not entitled to a presumption of correctness); <u>Suniga v. Bunnell</u>, 998 F.2d 664, 667 (9th Cir. 1993) (determination by state appellate court that instructional error was harmless is mixed question of law and fact to be reviewed *de novo*). <u>See also</u> <u>Cremeans v. Chapleau</u>, 62 F.3d 167, 169 (6th Cir. 1995), <u>cert.</u> <u>denied</u> ___ U.S.

___, 116 S.Ct. 822, 133 L.Ed.2d 765 (1996) (finding that mixed question of law and fact is not entitled to deference).

Furthermore, it is impossible to determine the impact of an error and evaluate its harmlessness without evaluating it in the context of the entire record. Our rules of appellate procedure require as much: "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, *considering the whole record*, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." See Tenn. R. App. P. 36(b) (emphasis added). Moreover, Howell directs the reviewing court to examine the entire record for factors which potentially influenced the jury's decision. 868 S.W.2d at 260. This is necessary to satisfy the constitutional demand of individualized sentencing considerations in capital cases. Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992).

In reaching these conclusions, we are guided by the approach used in federal courts for habeas corpus proceedings.[2] In such proceedings, factual findings of the state courts are entitled to a presumption of correctness, just as we grant deference to the post-conviction court. See 28 U.S.C. §2254(e)(1) (Supp. 1997). This deference is equally applicable to findings of a state appellate court. Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). However, when determining the harmlessness of an error, review of the record should be *de novo* with no presumption of correctness. See Miller v. Fenton, 474 U.S. 104, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985) (concluding that ultimate question of admissibility of confession is not factual determination entitled to presumption of correctness). It is within this context that we review appellant's assigned errors.

_____

[2]This Court has previously held that post-conviction review is comparable in scope to federal habeas corpus review. Luttrell v. State, 644 S.W.2d 408, 409 (Tenn. Crim. App. 1982).

**MIDDLEBROOKS ERROR**

Appellant argues that his death sentence is infirm as a result of the jury's application of the felony-murder aggravating circumstance to his conviction for first degree felony murder. He contends that such error cannot be considered harmless in light of the substantial mitigating evidence presented at trial and the presence of only one valid aggravating circumstance. We disagree.

When a defendant is convicted of first degree murder solely on the basis of felony murder, use of the aggravating circumstance that the murder was committed during the perpetration of a felony fails to sufficiently narrow the class of death-eligible murderers. State v. Middlebrooks, 840 S.W.2d 317, 346 (Tenn. 1992). Because use of this aggravating circumstance in a felony-murder conviction to assess the death penalty duplicates the elements of the offense, it violates the Tennessee Constitution. Id. Thus, in order to support death as a penalty for the crime of felony murder, a finding of at least one of the other statutory aggravating circumstances is necessary. Id at 346-47. This rule has been held to apply retroactively. Barber v. State, 889 S.W.2d 185, 186 (Tenn. 1994), cert. denied ___ U.S. ___, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995).[3]

It is apparent on the face of the record that a Middlebrooks error occurred in appellant's case. Appellant shot and killed Rhonda Greene during the course of a robbery of the Jiffy Market where she worked. As a result, the jury found him guilty of first degree felony murder. The jury's application of the felony-murder aggravating circumstance was duplicative of the elements of the crime. As a result, this circumstance cannot be used to support appellant's death sentence.

Such error, however, does not automatically mandate a reversal of appellant's death sentence or require a new sentencing hearing. This Court must review the

---

[3]Ordinarily, the statute of limitations would have expired on July 1, 1989, thereby preventing this late-filed post-conviction petition. Tenn. Code Ann. §40-30-102 (repealed 1995). See also State v. Masucci, 754 S.W.2d 90, 91 (Tenn. Crim. App. 1988). However, with regard to affording appellant the right to litigate the Middlebrooks issue, his present petition was timely under the rule announced in Burford v. State, 845 S.W.2d 204 (Tenn. 1992).

record of the evidence at trial and evaluate whether the error is harmless beyond a reasonable doubt. See State v. Howell, 868 S.W.2d 238, 259 (Tenn. 1993), cert. denied 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). To perform that analysis, our supreme court delineated certain factors which potentially influence the sentence imposed at trial. Id at 260. These relevant factors include: (1) the number and strength of the remaining valid aggravating circumstances; (2) the extent to which the prosecutor emphasized the invalid aggravating circumstance during closing argument; (3) the evidence admitted to establish the invalid aggravator; and (4) the nature, quality, and strength of the mitigating evidence. Id at 260-61. If the reviewing court determines that the jury would have imposed the same sentence had it given no weight to the invalid aggravating circumstance, the error is harmless and the sentence may be affirmed. Id at 262.

## HOWELL ANALYSIS

### A.    Remaining Aggravators

At appellant's trial, the jury found one other aggravating circumstance in addition to the felony-murder aggravator: appellant had previous convictions of felonies involving the use or threat of violence to the person.[4] Tenn. Code Ann. §39-2404(i)(2) (Supp. 1981). In support of this aggravating circumstance at the sentencing phase, the State introduced testimony and certified copies of convictions to substantiate three previous violent felonies from the state of Ohio: robbery, armed robbery and kidnapping.[5]

Although the number of valid aggravators is relevant, the crucial inquiry is the qualitative nature of the aggravating circumstance, its substance and persuasiveness, and the quantum of proof supporting it. Howell, 868 S.W.2d at 261. In this respect, our supreme court has determined that the prior violent felony aggravator is more

---

[4]At trial, appellant conceded the presence of these two aggravators in his closing argument.

[5]Appellant testified about his previous convictions during his direct testimony at the guilt phase of the trial.

9

qualitatively persuasive and objectively reliable than others. Id. Moreover, the influence of this aggravating circumstance increases if there is proof of multiple felony convictions. Id. See also State v. Nichols, 877 S.W.2d 722, 738 (Tenn. 1994), cert. denied 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995).

Appellant's previous robbery conviction arose from the hold-up of a dairy store in Cuyahoga Falls, Ohio. The victim, an eighteen-year-old clerk at the store, testified that appellant entered the store and demanded money. He had his hand in his pocket and she was unsure if he was armed.[6] The armed robbery conviction and kidnapping arose in Canton, Ohio. Appellant was armed and entered a restaurant. As he was robbing a waitress, a police cruiser drove into the restaurant parking lot. Appellant took the waitress hostage to make his escape. He and his accomplice held her for ten hours and then released her. The victim testified at trial, stating that appellant threatened her life more than once while she was being held, but that she was not physically harmed. She added that appellant did not want to release her and his accomplice eventually convinced him to do so. Appellant pled guilty to all three crimes and served approximately seven and one half years in an Ohio state prison.[7]

The record supports the trial court's finding that the remaining aggravating circumstance in appellant's case was supported by uncontradicted and overwhelming proof. The appellant testified to the substance of these crimes during the guilt phase, the State introduced certified copies of the convictions, and the victims of the crimes testified at the sentencing phase of appellant's trial. Due to the objective nature of this aggravating circumstance and the quantum of proof supporting it, we believe it significantly influenced the jury's verdict.

---

[6]The characterization of this crime as a violent felony used to support the aggravating circumstance was challenged on direct appeal. The victim's testimony was that she was placed in fear because appellant's hand was in his pocket in a manner indicating that he had a weapon. Considering that fact, our supreme court found that it was not error to admit the conviction. Harries, 657 S.W.2d at 421.

[7]Upon release, appellant was immediately incarcerated in federal prison for mail fraud. Appellant committed the instant offense less than two months after his December 12, 1980, release from confinement.

10

Appellant argues that the admission of non-violent criminal acts during the penalty phase of the trial undermines confidence in the jury's determination on the previous violent felony aggravating circumstance. At the sentencing phase, the State introduced proof of convictions for malicious breaking and mail fraud. The circumstances surrounding those offenses demonstrate that they did not involve violence or the threat of violence. A panel of this Court recently held that the admission of non-violent felonies at the penalty stage of a capital trial does not necessarily require a new sentencing hearing, but may be considered harmless error. State v. Perry A. Cribbs, No. 02C01-9508-CR-00211 (Tenn. Crim. App. at Jackson, February 14, 1997). See also State v. Campbell, 664 S.W.2d 281, 284 (Tenn. 1984), cert. denied 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984). But see State v. Johnson, 661 S.W.2d 854 (Tenn. 1983) (determining that admission of non-violent felonies in support of the aggravating circumstance was so prejudicial that it required a new sentencing hearing). In holding that any error at appellant's trial in this respect was harmless, we concur in the conclusion of Cribbs that the rationale of Johnson is inapplicable in light of subsequent United States Supreme Court holdings. See Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (permitting harmless error review when jury has relied on invalid aggravating circumstance in imposing death penalty).

We are confident in the jury's finding on this aggravating circumstance in light of the substantial proof offered to support it. Moreover, the trial court instructed the jury to only consider the robbery, armed robbery and kidnapping convictions when evaluating the aggravating circumstance. It specifically directed that no other previous convictions could be considered on the aggravator.[8] In light of these attendant facts and the overwhelming proof submitted on the prior violent felonies, we do not find that

---

[8]As a corollary, the trial court further instructed the jury that all of appellant's previous convictions could be considered to rebut any claim or potential claim in mitigation that appellant had no significant history of prior criminal activity. See Tenn. Code Ann. §39-2404(c) (Supp. 1981).

11

the introduction of these two non-violent crimes affected the jury's verdict. Any error in their admission was harmless.[9]

**B. Prosecution's Closing Argument**

We next consider the prosecutor's closing argument and the extent to which it emphasized the invalid felony-murder aggravating circumstance. Our review of the record does not indicate that the district attorney placed any undue emphasis on this aggravating circumstance. The State sought to prove six statutory aggravating circumstances. The prosecutor's argument walked the jury through each of the aggravators and also addressed the mitigating circumstances. The prosecutor referred to the felony-murder aggravator only twice.

If any emphasis can be detected in the argument, it was devoted to the "witness killing" aggravator. Tenn. Code Ann. §39-2404(i)(6) (Supp. 1981) ("the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another"). This theory was a substantial component to the State's proof, beginning at the guilt phase of the trial. In response to questions by the prosecution, appellant acknowledged that the victims of his previous violent crimes identified him as the perpetrator. In light of that, the State implied that appellant intended to leave no witnesses to the robbery of the Jiffy Market to reduce the possibility of identification. That theory was additionally supported by proof that the appellant fired upon the other cashier at the market and circumstantial proof that appellant believed Greene was the only clerk in the store at the time of the robbery. See State v. Harries, 657 S.W.2d 414, 417 (Tenn. 1983).

Appellant acknowledges that only a small portion of the State's argument focused on the felony-murder aggravating circumstance, but argues that a substantial portion of the argument was devoted to the "witness elimination policy of the felony murder aggravator." He attempts to equate the felony-murder aggravator with the

---

[9]Introduction of the mail fraud conviction was challenged on direct appeal. The supreme court found that its admission was harmless error. Harries, 657 S.W.2d at 421-22.

12

witness-elimination aggravator.[10]  Compare Tenn. Code Ann. §39-2404(i)(7) (Supp. 1981) and Tenn. Code Ann. §39-2404(i)(6) (Supp. 1981).  This Court has previously rejected such a contention.  State v. Leroy Hall, Jr., No. 03C01-9303-CR-00065 (Tenn. Crim. App. at Knoxville, December 30, 1996).  Similarly, claims that use of these two aggravators constitute double weighing have also been rejected.  State v. James Blanton, No. 01C01-9307-CC-00218 (Tenn. Crim. App. at Nashville, April 30, 1997).

The legislature's delineation of these two separate aggravators is sufficient to rebut appellant's claim.  A finding of either can be used to support the imposition of the death penalty.  See Tenn. Code Ann. §39-2404(g) (Supp. 1981).  In addition, the plain language of these aggravating circumstances signify that they seek to target two different groups of murderers.  The witness-elimination aggravating circumstance, Tennessee Code Annotated section 39-2404(i)(6), enhances the punishment when it can be proven that at least one motive for the killing was the threat of defendant's apprehension.  State v. Smith, 868 S.W.2d 561, 580 (Tenn. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 417, 130 L.Ed.2d 333 (1994).  In contrast, the felony-murder aggravator is used to target those murderers who cause the death of the victim while committing, attempting to commit or fleeing from certain enumerated felonies.  Tenn. Code Ann. §39-2404(i)(7) (Supp. 1981).  As such, different proof is necessary to support the imposition of each.  Although it may be argued that in many felony murders the purpose is to eliminate witnesses, State v. Terry, 813 S.W.2d 420, 423 (Tenn. 1991), such a blanket assertion does not apply to every felony murder.  It cannot be said that every murder committed during the course of a felony is for the purpose of eliminating witnesses.  State v. Teresa Deion Smith Harris, No. 02C01-9412-CC-00265 (Tenn. Crim. App. at Jackson, November 12, 1996).  Each case must stand on its individual factual circumstances.  Appellant's argument on this issue fails.

---

[10]Although argued by the State, the jury did not find the witness-elimination aggravating circumstance.

**C. Evidence Supporting Invalid Circumstance**

Also relevant to our determination is the evidence which was admitted to establish the invalid aggravating circumstance. We must consider whether an invalid aggravator was established by evidence that was materially inaccurate or admissible only to support the invalid aggravator, or whether the evidence was otherwise admissible in the guilt or sentencing phases. Howell, 868 S.W.2d at 261. Evidence that the murder was committed during the commission of a felony came during the State's case-in-chief at the guilt phase and resulted in appellant's conviction of felony murder. No additional evidence to support the invalid aggravator was introduced in the sentencing phase of the trial. An aggravating factor which duplicates the elements of the underlying crime, as in appellant's case, has less relative tendency to prejudicially affect the sentence imposed. Id. Appellant conceded this point at the post-conviction hearing.

**D. Mitigation Evidence**

Finally, we must consider all the relevant mitigating evidence, including its nature, strength, and quality. Howell, 868 S.W.2d at 262. Appellant's case is replete with information offered as mitigation, primarily pertaining to his history of drug and alcohol abuse and addiction. Indeed, at trial, drug and alcohol abuse was the primary theory of appellant's defense. Appellant contended that he was high on drugs at the time of the offense and unaware of his actions.

Appellant testified during the guilt phase of the trial. In addition to testimony of his previous crimes and periods of confinement, appellant detailed his use of drugs and alcohol during his teenage years that continued throughout his adult life. He stated that he unsuccessfully tried to overcome his drug habit while incarcerated.[11] In addition to alcohol, appellant provided detailed descriptions of the amount and types of drugs he was using in the days before and the day of the shooting. Appellant's

_____

[11]Appellant testified that when he was nearing release from prison, he sought methadone treatment from the prison doctor. This claim was not corroborated by any other evidence in the record.

14

convicted accomplice and alleged drug supplier, Charles Wade Stapleton, attested to appellant's use of drugs and alcohol before the crime.[12]

Furthermore, appellant testified that he did not intend to kill Greene and that the shooting was accidental. He explained that the gun was cocked when he entered the store. As he pointed the gun at Greene, he claimed that another patron in the store startled and jostled him, causing the gun to discharge. Another aspect of appellant's testimony intended to be mitigating was that the gun did not belong to him. Appellant claimed that he obtained the gun from Ralph Page, a mutual friend of appellant and Stapleton, and that Page was the moving force behind the robbery. Appellant concluded his testimony by expressing remorse for the crime.

Appellant did not testify at the sentencing portion of the trial, relying on his earlier testimony as mitigation. Instead he introduced documentary evidence in mitigation at the sentencing phase. A report from Dr. Herbert Bockian, a psychiatrist who evaluated appellant's competency to stand trial and screened him for drug use, was read into the record. That drug screen, performed the week of the trial, revealed a trace amount of barbiturates in appellant's blood. The test was performed in response to appellant's claims that he was obtaining and taking drugs while confined. Apparently, the report was intended to corroborate appellant's testimony of his drug addiction.

A report from the Southern Ohio Correctional Facility was also introduced. The 1977 report reflected that appellant possessed a syringe and one pill of Creptodigin while in jail. Prison guards also observed fresh needle marks on appellant's arms at that time. Again, this was intended to corroborate appellant's testimony of drug abuse and addiction, specifically his claims that it continued throughout his confinement in penal institutions.

---

[12]The State contended that this was in exchange for favorable testimony appellant had already given on behalf of Stapleton at his trial.

We view such evidence as having little, if any, value in lessening appellant's culpability in the eyes of the jury. Most of the evidence depicted an undesirable lifestyle, painting a picture of a man who "caroused" at night, slept during the day, and failed to maintain employment. In contrast, there was absolutely no evidence introduced in support of appellant's good character. State v. Howell, 868 S.W.2d 238, 262 (Tenn. 1993), cert. denied 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994).

The jury obviously gave little weight to appellant's testimony that he was "spaced out" or high on drugs at the time of the crime. Appellant possessed a clear recollection of the events of that evening. Proof reflected that appellant and his accomplice drove around for some time before the crime to find a good place to rob. Appellant entered the store and waited for another customer to leave before he committed the crime. In addition, he had no difficulty fleeing from the crime scene, meeting his accomplice at an appointed place, and later counting the money and separating it from food stamps. After counting the money, he buried the money bags behind Stapleton's house and later that night gave the food stamps to Stapleton's niece. Those activities indicate a keen appreciation for the wrongfulness of his conduct. Moreover, the day following the crime, appellant, Stapleton, and Page traveled to North Carolina to dispose of the gun used in the murder. Following that trip, they had planned an elaborate scheme for the three of them to rendezvous in Florida.

The appellant argues that the trial court erred by finding the proof insufficient to sustain a determination that appellant was substantially impaired. Tenn. Code Ann. §39-2404(j)(8) (Supp. 1981). As stated, we find the trial court's conclusion on substantial impairment supported by the record. However, he argues that even if the proof did not satisfy that statutory mitigator, the information could still have been considered in mitigation. See Tenn. Code Ann. §39-2404(j) (Supp. 1981) (mitigation

evidence not limited to statutory mitigating circumstances).[13]  See also Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (holding that evidence at the sentencing phase cannot be limited to statutory mitigating circumstances).  Contrary to appellant's assertion, the trial court did not find that the evidence could not be considered in mitigation.  Rather, it gave it little weight in mitigation when considering it in light of the quality of the proof supporting the valid aggravating circumstance.  Howell, 868 S.W.2d at 262.  Even though the evidence may have been considered by the jury, its questionable value was necessarily considered by the trial court in weighing the harmlessness of the Middlebrooks error.  Hartman v. State, 896 S.W.2d 94, 104 (Tenn. 1995) (concluding that credibility of witness is relevant when weighing harmlessness of invalid aggravating factor).

Moreover, the trial court found that evidence of appellant's drug addiction was not persuasive in mitigation; there was virtually no factual proof offered in support of that claim.  There was no medical evidence that appellant was addicted to drugs or alcohol, nor did the psychological evaluations indicate that appellant was addicted.  His testimony on the issue, corroborated only by accomplice testimony and thin documentary evidence from four years before the crime, is hardly convincing or significant in light of the other proof.

The trial court also found by the appellant committing violent crimes to support a drug habit, any mitigation from which the appellant might benefit was negated.  Appellant characterizes this conclusion as rank conjecture.  Again, it was the trial court's duty to consider the quality and persuasiveness of the mitigating evidence in the weighing of harmless error.  Howell, 868 S.W.2d at 262.

---

[13]Appellant's brief cites "Section 39-2404(j)(9)" which allegedly "provided that the jury could consider 'any other evidence you find to be mitigating circumstances.'"  We note that subsection (j)(9) was not a part of the 1981 statute.  However, the trial court's instructions to the jury advised that the jury could consider any facts or circumstances in mitigation.

Other mitigation evidence offered by appellant lacked credibility. Appellant never disputed that he shot Rhonda Greene, but claimed that it was accidental. However, this was contradicted by other witnesses. Appellant claimed that Scott Fletcher, another store patron, startled him and jostled his arm causing the gun to fire. In contrast, Fletcher's statements to law enforcement and unequivocal testimony at trial reflected that he was standing outside the store in the parking lot at his car when he heard the gunshots. Additionally, the surviving store cashier testified that she saw Fletcher exit the store and moments later heard the gunshot.

Finally, appellant's remorse for Greene's death was of little value in mitigation. As the post-conviction trial court noted, this sorrow developed well after the crime was committed. After shooting Greene, appellant exhibited no remorse. He did not attempt to aid the victim, but instead fired a shot at the other clerk. He then repeatedly demanded the money from her and did not permit her to seek medical assistance for Greene.

We are aware that appellant has offered evidence throughout his post-conviction proceedings that he suffers from brain damage. He argues that this should be considered in mitigation of his crime. However, we note that such evidence was not before the jury and could not have played a role in its decision. In addition, the evidence of brain damage primarily consists of a letter from a New York psychiatrist,[14] dated five years after the crime. Although appellant has been evaluated on numerous

---

[14]This evaluation was the basis of a 1984 ruling by a federal district court that appellant was incompetent to waive his post-conviction rights and proceed to execution. See Groseclose ex rel. Harries v. Dutton, 594 F.Supp. 949, 956 (M.D. Tenn. 1984).

occasions by both psychologists and psychiatrists,[15] the record before us does not indicate that other doctors have reached a similar conclusion.[16]

Appellant broadly attacks the Howell harmless error analysis because the jury is not required to specify the mitigating circumstances it considered. He contends that it is virtually impossible to determine harmlessness without knowing which facts the jury considered in mitigation. Our supreme court, acknowledging that juries do not specify mitigating circumstances, has nevertheless found that a harmless error analysis can be performed. The court quoted with approval from Clemons v. Mississippi, 494 U.S. 738, 756, 110 S.Ct. 1441, 108 L.Ed.2d 625 (1990):

> Nor are we impressed with the claim that without written jury findings concerning mitigating circumstances appellate courts cannot perform their proper role. In *Fonzeo* and *Proffit*, we upheld the Florida death penalty scheme permitting a trial judge to override a jury's recommendation of life, even though there were no written jury findings. An appellate court also is able adequately to evaluate any evidence relating to mitigating factors without the assistance of written jury findings.

Howell, 868 S.W.2d at 260. Appellant's argument is without merit.

Appellant argues that his death sentence cannot be upheld in light of the supreme court's ruling in State v. Walker, 910 S.W.2d 381 (Tenn. 1995). In Walker, a direct appeal of a death sentence, the court was unable to find the Middlebrooks error harmless where the only valid remaining aggravator was a previous violent felony conviction. Id at 398. However, Walker is readily distinguishable from appellant's case. At the Walker trial, the remaining aggravator was supported by only one voluntary manslaughter conviction. Cf. State v. Michael J. Boyd, No. 02C01-9406-CR-00131 (Tenn. Crim. App. at Jackson, February 21, 1996), appeal granted (Tenn.

---

[15]Appellant's competency to stand trial was evaluated twice before the trial, as well as his ability to appreciate the wrongfulness of his conduct at the time of the offense. No personality disorders or defects were discovered. We also note that, according to testimony from appellant's trial counsel, appellant was vehemently opposed to pursuing an insanity defense and instructed his attorneys not to consider it. Moreover, appellant's competency to proceed in the instant proceeding was evaluated at the trial court level.

[16]We acknowledge that a report from a boys' home may have alluded to brain damage. However, this testing was done in 1962 and testimony at the first post-conviction hearing attacked the credibility of this finding.

19

November 25, 1996) (finding in review of post-conviction proceeding that use of felony-murder aggravating circumstance harmless beyond a reasonable doubt where remaining valid aggravator, prior violent felonies, was supported by one conviction for second degree murder). Here, however, the aggravator at appellant's trial was supported by proof of three previous violent felonies and a portion of that proof was appellant's own testimony. Therefore, the nature and the quantum of proof supporting the aggravator was far more substantial than in Walker.

In fulfilling our duty to evaluate the mitigating evidence, we find that the evidence proffered was of little consequence in lowering appellant's culpability. Appellant admitted shooting the victim and his claims in mitigation did little to ameliorate his liability for the crime. On two separate occasions, the supreme court has considered similar mitigating evidence presented on behalf of defendants and found it insufficient to require a new sentencing hearing in the context of harmless error. See State v. Hines, 919 S.W.2d 573, 584 (Tenn. 1995); Howell, 868 S.W.2d at 262. Considering the substantial proof presented on the remaining valid aggravator and the nature of that proof, coupled with the prosecutor's argument and absence of inadmissible proof of the invalid aggravator, we find that the jury would have imposed the death penalty had it not considered the invalid felony-murder aggravating circumstance.

## CONCLUSION

The trial court's findings of fact on the individual factors considered in Howell are fully supported by the record. Moreover, our *de novo* review indicates that the error in applying the felony-murder aggravator to appellant's case was harmless beyond a reasonable doubt. The judgment of the trial court dismissing the appellant's post-conviction petition is affirmed. Unless stayed by a court of competent jurisdiction, the appellant's sentence of death by electrocution shall be carried out on February 10, 1998.

_____
William M. Barker, Judge

CONCUR:


_____
Gary R. Wade, Judge


_____
Curwood Witt, Judge