IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 10, 2001

## LaKREASHA KIMBLE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P21281      Joseph B. Dailey, Judge**

---

**No. W2000-00715-CCA-R3-PC - Filed March 14, 2001**

---

This is an appeal of a denial of post-conviction relief.  The petitioner and two codefendants were each convicted of murder in the perpetration of robbery and of especially aggravated robbery for the robbery and killing of a man who had given them a ride in his car.  The petitioner appealed her convictions to the post-conviction court, arguing, *inter alia*, that her counsel provided ineffective assistance by his failure to petition for a severance of trial from her codefendants.  The post-conviction court denied relief, finding the petitioner's claims to be without merit.  Based upon a thorough review, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

John E. Finklea, Murray, Kentucky, for the appellant, LaKreasha Kimble.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; William L. Gibbons, District Attorney General; and Amy P. Weirich, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner appeals from the post-conviction court's denial of post-conviction relief on her convictions for first degree, felony murder and especially aggravated robbery.  The sole issue the petitioner raises on appeal is whether the post-conviction court erred in finding that her trial counsel was not ineffective for failing to request a severance from her codefendants.  After a review of the record, we affirm the judgment of the post-conviction court.

## FACTS

The petitioner, LaKreasha Kimble, and her two codefendants, Erica Nelms and Latasha Thomas, were each convicted by a jury of murder in the perpetration of a robbery and of especially aggravated robbery for the robbery and murder of a man who had given the three women a ride in his car. The convictions were affirmed on direct appeal to this court, and our supreme court denied application for permission to appeal. See State v. Erica Nelms, No. 02C01-9604-CR-00116, 1997 WL 272443 (Tenn. Crim. App. May 23, 1997), perm. to appeal denied (Tenn. 1998). The petitioner received a life sentence for the first degree murder conviction, and fifteen years for the especially aggravated robbery conviction, to be served concurrently with the life sentence.

On April 21, 1999, the petitioner filed a *pro se* petition for post-conviction relief. Following the appointment of counsel, amended petitions for post-conviction relief were filed on August 2, 1999, and on December 2, 1999. The petitioner contended that she had been denied a fair trial as a result of the ineffective assistance of trial counsel, alleging that counsel had been ineffective by, *inter alia*, failing to request a severance of the petitioner from her codefendants.

At the post-conviction hearing, the petitioner testified that she was unhappy with the representation provided by her trial counsel. She felt that she should have had a separate trial from her codefendants, but her trial counsel had failed to request a severance. In separate statements to the police, the petitioner had said that it was Nelms who stabbed and killed the victim, while Nelms had pointed the finger at the petitioner. None of the codefendants had testified at trial, but redacted portions of their statements had been read into evidence. The petitioner believed that this had resulted in an unfair trial. She said that her defense, had she been given a separate trial, would have been that she and her codefendants had abandoned an earlier plan to commit a robbery by the time they accepted the ride from the victim, and that Nelms had acted "spontaneously" by stabbing the victim in the neck with a steak knife.

On cross-examination, the petitioner acknowledged that she had given a lengthy statement to the police in which she had admitted that she had had a pellet gun, and that she and her codefendants had each armed themselves with steak knives in order to commit a robbery; that they had accepted the offer of a ride from the victim;[1] that after the victim had driven her and her

---

[1]Contrary to the State's suggestion at the post-conviction hearing, the petitioner's statement to the police contains no direct admission to having accepted the ride from the victim with the intention of robbing him. During the State's cross-examination of the petitioner regarding the contents of her statement, the following exchange took place:

Q. And the three of you got in the car planning on robbing him. And then all of a sudden, Erica stabs him from–she was sitting in the backseat, right?

A. That's correct.

Q. And she stabbed him in the neck, right?

(continued...)

codefendants around for some time, Nelms had suddenly stabbed the victim in the neck with a steak knife; that the victim had gotten out of the car and run away; and that she and her codefendants had then driven off in the victim's car. The petitioner admitted that the trial court had allowed only redacted portions of her statement and of her codefendants' statements at trial, and that those portions revealed only that she had been present, that she had had a knife and a gun, that they had been planning to rob someone, and that one of her codefendants had stabbed the victim.

The petitioner's trial counsel testified that he had been licensed to practice law in Tennessee since 1988, and had handled "easily more than ten in 1995" first and second degree murder cases. He had been appointed to represent the petitioner in February 1995, after her original counsel had been recused due to a conflict. He had met with the petitioner both in court and in jail, and "fully discussed her case and went over her background and talked about what defense or strategy we would proceed with in the case." Trial counsel said that after considering the facts of the case, he had decided not to file a motion for severance. He explained his reasoning:

> When faced with the issue of whether to try the defendants together or separate, I didn't file a motion for severance due to the fact that I felt–there was a case in which an individual was stabbed in the neck which all of it pointed to Erica Nelms. There was a statement given by [the petitioner] which basically said that Ms. Nelms acted spontaneously and that for some reason she'd got tired of whatever [the victim] was doing and just reached up and stabbed him as he was driving the car from her position in the backseat.

> Due to the fact that [the petitioner] I believe was in the front right passenger seat at the time of the stabbing, in the statement of admission which she had given which she never contested as being untrue, it was our position that the least of two evils would be to try it together and point at Ms. Nelms as being the person who stabbed and killed [the victim]. And also the fact that since there was a death that was involved, we didn't want to be tried by ourself [sic]. As a matter of strategy, to allow us to point toward Ms. Nelms if anyone. So therefore it was a strategy decision. And due to the fact that Ms. Nelms appeared to be the person who stabbed him, and we could argue that to the jury rather than have her sitting here by herself and having the jury wonder who Ms. Nelms was.

Trial counsel stated that one of his defense tactics had been to attempt to show that Nelms had stabbed the victim based on "some type of motivation" of her own, of which the petitioner had been unaware. He had attempted to present the petitioner's subsequent participation in the taking

---

[1](...continued)
    A. Yes, ma'am.

of the automobile as an "after-the-fact deal in which there was no premeditation or knowledge or intent on her part to take the car as part of the robbery."

On cross-examination, the petitioner's post-conviction counsel questioned trial counsel at length about the implications of his decision not to file a motion for severance:

> Q. Let me ask you, did you consider a Bruton[2] issue, Bruton problems with these three being tried together under the statements that you were aware of?
>
> A. I think when I talked to defense counsel prior to the trial, and I think when I talked to [the petitioner], I'm sure–I don't have it logged or right in front of me–but I'm sure we discussed whether or not she would take the stand or whether another codefendant would take the stand and any and all Bruton issues. But ultimately I think the desire was to proceed on the strategy that Ms. Nelms was the perpetrator and any involvement that [the petitioner] had was not premeditated of any type. There was no premeditation to commit any type of robbery. Taking the car was kind of an after-the-fact action by [the petitioner]. Not a perpetration of any crime.

Trial counsel's answers to further questions revealed that he had utilized the same arguments at the joint trial that the petitioner claimed would have constituted her defense had she been allowed a separate trial:

> Q. Would it be a fair assumption that someone could read [the petitioner]'s statement and take it that she had planned an earlier robbery but abandoned that idea because they were scared?
>
> A. I think I argued that to the jury.
>
> Q. All right. And along with that then that she didn't have any information that Erica Nelms was going to stab someone?
>
> A. I think that's exactly what I argued to the jury.
>
> Q. Do you recall that Erica Nelms' statement came in to the jury about her not having a knife?

___

[2] Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), held that a defendant is deprived of his Confrontation Clause rights when a codefendant's incriminating confession is used at their joint trial.

-4-

A. I don't recall.

Q. Do you recall the statement of [the petitioner]coming in that she did have a knife?

A. A knife and I think a pellet gun or some type of fake gun. A plastic gun or a pellet gun and a knife.

Q. In [the petitioner]'s statement when she mentions a pellet gun and a knife and planning a robbery, wouldn't that go toward the earlier robbery that was planned and abandoned?

A. I'm sure that's what I argued to the jury. Any statement regarding a weapon and/or any intent to commit a robbery I think I argued to the jury if my recollection is correct. That that was an action that was going to take place at the K-Mart or whatever the shopping center was and that action or plan was abandoned by [the petitioner] at the time they got in the car with [the victim].

Trial counsel testified that the trial court had "attempted to redact the statements where there was no specific reference to any of the parties, any of the two codefendants by one defendant." He said that he and the other codefendants' counsel had argued that even the redacted statements were prejudicial and should be excluded. The trial court had denied their request, and the matter had subsequently been raised on direct appeal to this court.

On March 7, 2000, the post-conviction court entered an order denying the petitioner relief. The court found that the representation provided the petitioner by trial counsel had been "outstanding in every regard," that trial counsel had done "all that could have been reasonably expected of him with regard to protecting [the petitioner]'s interests at trial," and that the petitioner had been "well represented" at trial.

## ANALYSIS

The petitioner appeals the post-conviction court's denial of her petition for post-conviction relief. The sole issue the petitioner raises before this court is whether the post-conviction court erred in finding that trial counsel was not ineffective by failing to request a severance from her codefendants. The petitioner argues that, given the circumstances of the case in which she and her codefendants had made statements placing the blame on each other, a request for a severance would have been "only logical," as a means of protecting her right to a fair trial. The petitioner contends that she presented "substantial evidence" at the post-conviction hearing to show that trial counsel was ineffective for failing to request a severance. In support of her claim, she cites her testimony, in which she asserted her belief that a severance would have afforded her a fair trial, and trial counsel's testimony, in which he stated that it had been a strategy decision not to pursue a severance.

The State argues that trial counsel's decision not to file a motion for severance was a reasonable trial strategy, and that the petitioner's uncorroborated testimony that she would have received a fair trial if her case had been severed is a bare conclusion, insufficient to carry her burden of proof. The State also points out that this court has already determined, on direct appeal of the convictions, that the petitioner was not prejudiced by the admission of her codefendants' redacted statements at trial, and that no Bruton error occurred. The State, therefore, asserts that the post-conviction court did not err in finding that the petitioner had effective assistance of counsel at trial.

## I. Standard of Review for Post-Conviction Proceeding

The petitioner has the burden of proving her allegations in the post-conviction proceeding by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The post-conviction court's findings of fact and conclusions of law in a post-conviction hearing are given the weight of a jury verdict and accorded a presumption of correctness. See Harries v. State, 958 S.W.2d 799, 802 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1997). The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against those findings. Id.

## II. Petitioner's Claim of Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient, and that trial counsel's deficient performance prejudiced her defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997), perm. to appeal denied (Tenn. 1998) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). This is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by a showing that counsel's actions or decisions "f[e]ll below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by a showing of a reasonable probability, i.e., a "probability sufficient to undermine

confidence in the outcome" of the case, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997), cert. denied, 525 U.S. 830, 119 S. Ct. 82, 142 L. Ed. 2d 64 (1998). For this reason, courts need not approach the test in a specific order, or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner contends that it would have been "only logical" for trial counsel to request a severance, and argues that counsel's failure to do so constituted a deficiency in performance. The "substantial proof" upon which she relies, however, does not support her position. Her own testimony expressing her belief that she would have fared better with a separate trial is insufficient to establish her claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1997) (stating that fact that a trial strategy proves unsuccessful is not a sufficient basis, alone, to support a claim of ineffective assistance of counsel). Neither does trial counsel's testimony that his decision had been a matter of trial strategy support the petitioner's position. To the contrary, trial counsel's testimony, in which he explained his decision, supports the post-conviction court's finding that the failure to request a severance had not constituted deficient representation.

The reviewing court must be highly deferential in its scrutiny of trial counsel's performance. Henley, 960 S.W.2d at 579. Trial counsel's decision not to file a motion for severance must be judged from his perspective at the time of trial. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. When reviewing trial counsel's performance, we indulge in a strong presumption that his conduct falls within the range of reasonable professional assistance, see id. at 690, 104 S. Ct. at 2066, and do not second-guess his tactical and strategic choices, unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

In the post-conviction hearing, trial counsel provided sound and logical reasons why he had opted not to pursue a severance in the case:

> I think you have to choose between the least of two evils. Whether you're tried together or by yourself. And I just think at the time it was considered, it would be better to try the case with Erica Nelms with any possible implications that may have and argue that Erica Nelms committed this act without any type of premeditation or planning on the part of [the petitioner].

> Rather than having a separate trial where [the petitioner] is tried by herself, they establish the death of [the victim] and enter the

statements that she was there and involved in a homicide–I mean a robbery planned prior to the death of [the victim] and that she was in the car with him at the time he died; and then later seeing her riding around in his car a substantial amount of time after his death in his automobile. I don't think that would show to the jury very much remorse on her part, the fact that she's still in the car riding around several hours later.

Based on the evidence presented, which included testimony of trial counsel's preparation and research prior to trial, and motions, arguments, and appeals filed during and after trial, the post-conviction court found that trial counsel's representation had been "outstanding in every regard," and that the petitioner had been "well represented." The record supports those findings.

By failing to show that trial counsel's performance was deficient, the petitioner's claim of ineffective assistance of counsel must necessarily fail. We note in passing, however, that even had the petitioner been able to show that counsel was deficient for failing to file a motion for severance, she would have been unable to pass the prejudice prong of the Strickland test. The petitioner's claims of prejudice are based on an assertion of the detrimental impact caused by the trial court's admission of the redacted statements at trial. The petitioner raised essentially the same objection on direct appeal of her conviction, where we concluded that "the trial court exercised great care in examining the redacted statements to avoid prejudicing any appellant and that the instances raised in this appeal fail to rise to the level of Bruton error." See State v. Erica Nelms, No. 02C01-9604-CR-00116, 1997 WL 272443, at *6 (Tenn. Crim. App. May 23, 1997), perm. to appeal denied (Tenn. 1998). The petitioner is not entitled to relitigate this previously determined issue in a post-conviction proceeding. See Harvey v. State, 749 S.W.2d 478, 479 (Tenn. Crim. App. 1987); see also Tenn. Code Ann. § 40-30-206(h) (1997).

## CONCLUSION

We conclude that the petitioner has failed to meet her burden of showing either that trial counsel was deficient by failing to request a severance, or that his alleged deficiency prejudiced the outcome of her trial. Accordingly, the post-conviction court's denial of the petitioner's petition for post-conviction relief is affirmed.

_____
ALAN E. GLENN, JUDGE