IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2001

## FRANKLIN SCOTT KEITH v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Cocke County**
**No. 26,121    Rex Henry Ogle, Judge**

---

**No. E2001-00220-CCA-R3-PC**
**December 20, 2001**

---

The petitioner appeals the denial of his petition for post-conviction relief. The petitioner pled guilty to ten counts of rape of a child. On appeal, the petitioner raises the issues of whether the post-conviction court erred in finding that he received the effective assistance of counsel and whether his guilty plea was entered voluntarily and knowingly. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Tim S. Moore, Newport, Tennessee, for the appellant, Franklin Scott Keith.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James Bruce Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner, Franklin Scott Keith, was indicted on ten counts of rape of a child for crimes alleged to have occurred on various dates between March 1995 and April 14, 1998. On December 9, 1998, he entered a best interest guilty plea to all ten counts as charged. As part of the plea agreement, he received concurrent sentences of twenty years on each count, as a Range I, violent offender, to be served in the Department of Correction at 100%. No direct appeal was taken by the petitioner.

On November 23, 1999, the petitioner timely filed a *pro se* petition for post-conviction relief. Counsel was subsequently appointed, and an amended petition was filed on September 12, 2000. In the combined petitions, the following allegations were presented:

(1) the conviction was based on unlawfully induced guilty plea or guilty plea involuntary entered without understanding the nature and consequences of the plea;

(2) the conviction was based on use of coerced confession;

(3) the conviction was based on use of evidence obtained pursuant to an unlawful arrest;

(4) the conviction was based on a violation of the privilege against self-incrimination;

(5) the conviction was based on the unconstitutional failure of the prosecution to disclose to defendant evidence favorable to defendant; and

(6) the petitioner was denied effective assistance of counsel.

At the hearing on the post-conviction petition, the petitioner proceeded only on the claims that trial counsel was ineffective in misadvising him that he would be eligible for parole after serving 85% of his sentences, and that this wrong advice invalidated his guilty pleas. Additionally, he presented testimony that trial counsel was ineffective in not obtaining an additional mental evaluation. On appeal, the petitioner presented the additional claim that counsel was ineffective in not seeking a bill of particulars.

At the hearing, the petitioner, his trial counsel, and the clinical psychologist who evaluated the petitioner prior to his plea of guilty all testified. At the conclusion of the hearing, the post-conviction court denied the petition. On appeal, the petitioner alleges that his guilty plea was involuntary because both the State and his trial counsel failed to inform him that, due to the nature of his crimes, he would serve 100% of his sentence. He further alleges that his trial counsel was ineffective for failing to pursue a second mental evaluation and for failing to request a bill of particulars.

**DISCUSSION**

The facts of this case were presented by the State at the guilty plea hearing, without objection. The evidence included a statement made by the petitioner to Detective Robert Caldwell of the Cocke County Sheriff's Department on April 14, 1998, wherein the petitioner admitted that he had the victim, his stepdaughter under the age of thirteen, perform oral sex on him at least ten times between March 1995 and April 14, 1998. The printed plea agreement bears the phrase: "The Defendant agrees to plead," followed by the handwritten words, "Rape of Child - 10 counts," followed by the phrase, "and the State agrees to recommend to the Court the following sentence," followed by the written words "Twenty (20) years By statute this sentence is served at 100%." The agreement bears the signature "F. Scott Keith," and the date December 8, 1998.

At the post-conviction hearing, the petitioner testified that when trial counsel showed him the plea agreement, the portion which set out the sentence had not been completed but that he was relying upon his memory in this regard, which, he agreed, was "not very good." The petitioner said that there had been some discussion of a seventeen- to eighteen-year sentence. He further stated that trial counsel told him that his sentence would be "on the eighty-five percent range" and that his sentence could be reduced by 15%. However, the petitioner acknowledged that the plea agreement bearing his signature stated that his sentence would be "[t]wenty years by statute, this sentence served at one hundred percent."

When questioned about his confession, the petitioner said that he had no memory of giving the statement and that trial counsel did not discuss it with him. The petitioner stated that he had seen a doctor in Nashville in 1991 or 1992 for his memory lapses, but never returned to the doctor for follow-up tests. He said that he had abused "alcohol, cocaine, pills, [and] marijuana" since his early teen years, but said that he stopped when he began his employment at Mountain View Youth Development.

Dr. Richard Jeffrey Munson, a clinical psychologist with Cherokee Health Systems, testified that he conducted a mental evaluation of the petitioner on November 4, 1998. Dr. Munson said that the petitioner claimed to have "black-outs" and that the petitioner told him he had experienced memory lapses prior to and after a motor vehicle accident he had in 1995. He testified he had no recollection as to whether the petitioner claimed to have a history of substance abuse. Dr. Munson concluded that the petitioner suffered from a mental illness but was competent to stand trial.

The petitioner's trial counsel testified that, at the time of the hearing, he had been with the Public Defender's office for twelve years. He "guess[ed]" that he had prepared the plea agreement and said that it stated the petitioner's sentence would be served at 100%. Counsel did not recall discussing with the petitioner that the sentence would be served at 100% or reduced to 85%; however, he stated that "at some point in time" he thought that the sentence could be reduced to 85%. Counsel said that he negotiated the petitioner's twenty-year sentence with the State, and that there was a "real likely possibility" that the petitioner would have received consecutive sentencing had the case gone to trial and the petitioner been convicted.

Counsel testified that the petitioner's case was "difficult" because of the petitioner's confession, the age of the victim, and it involved multiple counts over an extended period of time. Regarding the petitioner's confession, counsel said that the petitioner had told him that he had no memory of giving the statement and "possibly had suffered from some black-outs." Counsel filed a motion to suppress the confession, but no hearing was held on the motion. Counsel said there was no indication that the petitioner was coerced into giving the statement, and he did not think he would have been successful on the motion to suppress.

Counsel further testified that the petitioner told him he had seen other doctors for his memory lapses and that he had been in a tractor-trailer accident. Counsel requested the mental evaluation of the petitioner "out of an abundance of caution" but could not remember if he had discussed the

evaluation with Dr. Munson. Counsel said that he also filed a motion to have Dr. Eric Engum appointed to further evaluate the petitioner in order to pursue the avenue of the petitioner's mental illness if the case went to trial.

In this matter, the post-conviction court did not set out written findings of fact and conclusions of law, as required by Tennessee Code Annotated Section 40-30-211(b). However, reversal is not necessarily required when the post-conviction court recites from the bench, as occurred here, its findings of fact and conclusions of law. See State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987); State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984).

## ANALYSIS

### Standard of Review

The findings of fact of the post-conviction court are conclusive on appeal, unless the evidence preponderates against the findings. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999) (citing State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)). The appellate court cannot "reweigh or evaluate" the evidence. Id.; see also Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997), cert. denied, 525 U.S. 830, 119 S. Ct. 82, 142 L. Ed. 2d 64 (1998). However, the appellate court's review of the application of the law to the facts is *de novo*, without a presumption of correctness. See Burns, 6 S.W.3d at 461; Harries v. State, 958 S.W.2d 799, 802 (Tenn. Crim. App. 1997). Additionally, issues as to whether counsel was ineffective and whether prejudice resulted are mixed questions of law and fact. Burns, 6 S.W.3d at 461 (citing Goad v. State, 938 S.W.2d 363 (Tenn. 1996)).

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

-4-

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. Petitioner must, therefore, establish that "the advice given or the service rendered was not within the range of competence demanded of attorneys in criminal cases[.]" Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (holding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different"). In the context of a guilty plea, a petitioner must show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

By statute in Tennessee, the petitioner at a post-conviction relief hearing has the burden of proving the allegations of fact by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). A petition based on ineffective assistance of counsel is a single ground for relief, therefore all factual allegations must be presented in one claim. See Tenn. Code Ann. § 40-30-206(d) (1997).

## I. Voluntariness of Guilty Plea

The petitioner alleges that his guilty plea was not knowing and voluntary because his trial counsel failed to inform him that he would have to serve his twenty-year sentence without sentence reduction credits. Specifically, he contends that he "was told both by the State and his attorney that

he would be eligible for fifteen percent (15%) sentencing credits" and that "[t]he trial court did not correct the mistake." The State responds that the petitioner was aware of the terms of his sentence because "[it] advised the trial court that the defendant would be sentenced to 20 years as a Range I 100% Violent Offender."

The final minute of the petitioner's guilty plea hearing, after he had been advised of his rights and entered the pleas which had been accepted by the trial court, is the basis for the claim that the petitioner was misadvised as to parole eligibility:

> **THE COURT**: But anyway, I find him guilty and I approve the plea agreement and I sentence him accordingly to twenty years on each of [the counts]. He is Range 1, is that correct?
>
> [Trial Counsel]: Yes, Your Honor.
>
> **THE COURT**: Okay.
>
> **GEN. DUNN**: Yeah, but that would be, it will go down as a violent crime under the violent crime statute.
>
> **THE COURT**: Right. So that covers -- what does that . .
>
> **GEN. DUNN**: That is eighty-five percent. You know, it's a hundred percent . .
>
> **THE COURT**: Yes.
>
> **GEN. DUNN**: . . with the reduction of fifteen percent credits.
>
> **THE COURT**: So you understand that, don't you, Mr. Keith?
>
> **MR. KEITH**: Yes, sir.
>
> **THE COURT**: And you've discussed that with your attorney?
>
> **MR. KEITH**: Yes, sir.

In determining whether a guilty plea was voluntarily, knowingly, and intelligently entered, this court, like the trial court, must consider all relevant circumstances that existed at the entry of the plea. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A reviewing court may look to any relevant evidence in the record to determine the voluntariness of the plea. See id. When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S.

238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, the Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. The standard is the same for a "best interest" or Alford plea, that is, "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970).

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

At the post-conviction hearing, trial counsel testified as follows:

> Q. Do you remember this Keith case?
>
> A. I do.
>
> Q. And this has been the subject of some discussion already today. He was convicted as a child rapist, right?
>
> A. That's correct.
>
> Q. And under that statute he has to serve a hundred percent of his sentence?
>
> A. That's what we discussed and at least in the back of [my] mind at some point in time I thought that that at one time could be reduced to eighty-five percent and I'm not certain whether that was the law or not. Realize now it's one hundred percent. I did review the Plea Agreement I guess that was drawn by me that does say the plea was at one hundred percent, and I don't recall specifically discussing with Mr. Keith whether it was one hundred percent or whether it could be reduced to eighty-five percent.
>
> Q. Because for a general violent offender, for the other offenses that are set forth I guess in the statute that sets forth the hundred percent sentence generally for most offenses that come under that, it can be reduced by fifteen percent good credit?

A.  That's correct.

Q.  But 39-13-523 under the child rapist statutes states that it is not to be  reduced, it's a hundred percent sentence?

A.  That's what the statute we reviewed today..

**THE COURT**: So did you ever discuss with your client the fact that it might get cut to eighty-five percent?

A.  I cannot independently recall discussing that.

**THE COURT**:  Okay.

A.  Like I said, the Plea Agreement says one hundred percent.   I don't recall one way or the other.

Q.  Do you recall the plea hearing in this case?  Have you been able to review that Transcript?

A.  I looked at it, I did.   And I realized that [the State] in that mentioned eighty-five percent.

Q.  That's on the last page, right, that's the last thing that was brought up?

A.  Right.

In ruling on this issue, the post-conviction court stated the following:

> The Court went through the Transcript with Mr. Keith as it related to the colloquy between Mr. Keith and myself.  Furthermore, the plea agreement that he signed and a copy of which is in the record indicates that it was one hundred percent that he was to serve.  Certainly General Dunn made some statement toward the end of this that had possibly indicated that there might be some credit, but credits are not a right even if he could get them.  Those are things that would have to be earned.

> And the Court finds from the totality of the circumstances and the plea agreement as  stated and signed by Mr. Keith that the major thing in his mind and his attorney's mind was the avoidance of consecutive sentencing. And I told Mr. Keith that he certainly faced that possibility and that this basically was being done after I heard the

facts as an effort to avoid having that victim having to come in here and relive this. That was one of the reasons I took the plea as a Judge. Because he was an authority figure, he had all kinds of things for which he could have possibly been enhanced in the range up to twenty-five years as an authority figure.

He cut the minimum deal he could have cut. And there is no evidence, in fact the evidence is just to the contrary that yes, while he says he has had some memory losses and so forth, but everyone who evaluated this man stated that he could not support an insanity defense and that he was capable of assisting his attorneys at trial. And as I said from listening to him and based upon his credibility the Court finds that his memory loss is somewhat selective.

The Court finds that by the overwhelming evidence that his purpose was to avoid consecutive sentencing in this Court or at least the maximum in the range of twenty-five years. And that therefore the plea agreement was knowing and voluntary and that there is no basis upon which this Court should or will set aside this plea agreement.

So for those reasons the Petition is most respectfully overruled.

The transcript of the guilty plea hearing reveals that the trial court carefully and correctly informed the petitioner at length of his constitutional rights. The court also asked the petitioner if he understood that he was waiving those rights by pleading guilty. The petitioner responded in the affirmative. Additionally, he stated that he understood the plea agreement and was entering his best interest plea voluntarily. No reference was made about any sentence credits until after the trial court had accepted the plea agreement and sentenced the petitioner. We conclude, therefore, that the petitioner failed to prove by clear and convincing evidence that his guilty plea was based on the belief that he would only serve 85% of his sentence. Even assuming, *arguendo,* that trial counsel failed to correctly inform the petitioner about how much time he was going to serve, his testimony indicates that he pled guilty because it was in his best interest to avoid serving consecutive sentences and not because he believed that he could serve less than the entire sentence. In fact, he did not testify that he would not have pled guilty had he known that he would be required to serve 100% of his sentences. Accordingly, we agree with the post-conviction court in finding that the petitioner's plea was made knowingly, voluntarily, and understandingly.

## II. Ineffective Assistance of Counsel

The petitioner argues that he received ineffective assistance of counsel. Specifically, he alleges that his trial counsel, a practicing attorney for some twelve years with the Public Defender's Office for the Fourth Judicial District, was ineffective for giving him erroneous advice regarding his release eligibility at the time he entered his guilty plea, for failing to pursue the inquiry into the petitioner's mental state, and for failing to file for a bill of particulars.

-9-

## A. Erroneous Advice Regarding Release Eligibility

We have concluded previously in this opinion that the post-conviction court did not err in dismissing the petition for post-conviction relief, the lower court concluding that the plea of guilty was knowing and voluntary. The petitioner presented the related claim that he received ineffective assistance of counsel because he was erroneously advised that he would receive 15% sentence credits. However, to establish that counsel was ineffective, the petitioner must show both that his attorney's performance was deficient and that, but for counsel's errors, he would not have pled guilty but would have gone to trial. The petitioner has failed to present any testimony that he would not have entered pleas of guilty had he known that he would not receive 15% sentence credits. In fact, testimony of trial counsel was that there was a "real likely possibility" that the petitioner would have received consecutive sentencing had the matters gone to trial. Accordingly, the petitioner has failed to establish that he received ineffective assistance of counsel as to the alleged advice of counsel regarding sentence credits.

## B. Failure to Pursue Mental Evaluation

The petitioner contends that his trial counsel should have pursued his mental status, both at the time of the alleged offenses and at the time of the plea. The petitioner asserts that because "[a] preliminary examination of [him] at the local state mental health facility found a mental illness, but that the mental illness did not prevent [his] knowing the wrongfulness of his acts," trial counsel should have followed up on the information "to try to ascertain the nature of the mental illness or any mitigating impact the mental illness might have on the criminal case." The petitioner also complains that trial counsel did not pursue the motion for further mental evaluation filed the same day the petitioner entered his guilty plea, and that failure to have the petitioner further evaluated "casts a cloud over the guilty plea."

At the post-conviction hearing, Dr. Munson identified his letter of December 2, 1998, in which he stated:

> Mr. Franklin S. Keith was referred to Cherokee Health Systems (CHS) by order of your court under T.C.A. 33-7-301(a) for an evaluation of his competency to stand trial as well as for an evaluation of his mental condition at the time of the alleged offense. Mr. Keith was evaluated on charges of rape of a child (10 counts).
>
> After completion of the competency evaluation, I have concluded that his condition is such that he is capable of defending himself in a court of law. In making this determination, I found that he understands the nature of the legal process; that he understands the charges pending against him, and the consequences that can follow; and that he can advise his counsel and participate in his own defense.

After completion of the evaluation based on the standard adopted by the Tennessee Supreme Court in Graham v. State in 1977, and on the criteria set forth in T.C.A. 39-11-501, it is my opinion that a defense of insanity cannot be supported. This opinion is based on the determination that at the time of the alleged offense, the defendant was suffering from a mental illness, but that the mental status was not such as to justifiably prevent his knowing the wrongfulness of his alleged acts.

When asked during cross-examination whether he had changed his opinion concerning the petitioner's mental status, Dr. Munson testified that he had not and that "in [his] opinion the NGRI[1] plea could not be defended[.]"

While it is true that the petitioner claims that he does not remember giving a statement to the detective, the trial court found that "it would be an understatement to say that the defendant's memory or loss of memory is pretty select" and that "there [was] no evidence in the record from which [the] court should second guess [trial counsel]." Additionally, at the post-conviction hearing, there was no showing as to how a second mental evaluation would have been helpful to the petitioner's defense.

This issue is without merit.

### C. Failure to File for Bill of Particulars

Although the petitioner also claims that his counsel was ineffective for failing to file for a bill of particulars, he did not so argue until this appeal was filed with the court. He neither argued this issue at the post-conviction hearing, nor was trial counsel questioned about it.

A ground for post-conviction relief is waived "if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]" Tenn. Code Ann. § 40-30-206(g) (1997). The petitioner has waived this issue by his failure to raise it before the post-conviction court. See Workman v. State, 868 S.W.2d 705, 709 (Tenn. Crim. App. 1993).

Accordingly, this issue has been waived and cannot now be raised on appeal.

### CONCLUSION

We conclude that the petitioner's guilty plea was entered knowingly and voluntarily and that he received the effective assistance of counsel. Accordingly, the judgment of the post-conviction court is affirmed.

---

[1]Not guilty by reason of insanity.

-11-

_____
ALAN E. GLENN, JUDGE